Antonio J. VILLASAN, M.D., Appellant,

v.

William O'ROURKE, Individually; Laura O'Rourke, Individually; and Laura O'Rourke, as Next Friend of Brock O'Rourke, Appellees.

No. 09–04–409 CV.

Court of Appeals of Texas,
Beaumont.

Submitted April 14, 2005.

Decided May 26, 2005.

Greg Abbott, Atty. Gen., Barry R. McBee, First Asst. Atty. Gen., Edward D. Burbach, Deputy Atty. Gen. for Litigation, Nelly R. Herrera, Chief Tort Litigation Division, R. Ted Cruz, Solicitor, Sean D. Jordan, Asst. Solicitor Gen., David G. Halpern, Asst. Atty. Gen., Austin, for appellant.

Ronald L. Bair, Amanda S. Hilty, The Bair Law Firm, PC, Houston, for appellees.

Before McKEITHEN, C.J., GAULTNEY and HORTON, JJ.

## OPINION

HOLLIS HORTON, Justice.

This is a case of first impression and requires that we interpret the amended provisions of section 101.106(e) of the Texas Civil Practice and Remedies Code enacted as a part of the Legislature's tort reform efforts in 2003. *See* Tex. Civ. Prac. & Rem.Code Ann. § 101.106(e) (Vernon Supp.2005). Section 101.106(e) provides in suits where both the governmental unit and its employee are sued, the suit against the employee immediately be dismissed on motion of the governmental unit. The ultimate issue is whether the trial court erred in denying Dr. Antonio Villasan's motions requesting his dismissal from a suit filed by William · O'Rourke and other family members against Dr. Villasan and the University of Texas Medical Branch, Galveston ("UTMB"). Subsidiary to that issue are questions of whether the trial judge had a mandatory duty to dismiss Dr. Villasan pursuant to section 101.106(e) based on the government's filing of a motion to do so, and whether the amendments to section 101.106 apply despite a federal court suit filed by the O'Rourkes prior to the effective date of the amended provisions. Answering the two subsidiary questions in the affirmative leads us to conclude the trial court erred in failing to grant Dr. Villasan's motion to dismiss the claim against him, and accordingly, we reverse and dismiss.

## Procedural History

The O'Rourkes sued UTMB and Dr. Villasan, its employee, on September 22, 2003 in state court in Jefferson County, Texas. The O'Rourkes complain that Dr. Villasan negligently failed to diagnose William O'Rourke's cancer during a period when he received medical treatment while incarcerated at F.C.C. Beaumont Camp, a federal prison operated by the Federal Bureau of Prisons.

On February 17, 2004, UTMB filed a motion to dismiss and sever based on Civil Practice and Remedies Code section 101.106(e) that provides, "If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit." Tex. Civ. Prac. & Rem.Code Ann. § 101.106(e) (Vernon Supp.2005).

The O'Rourkes responded to UTMB's motion by filing their First Amended Original Petition, omitting UTMB as a party, and leaving Dr. Villasan as the sole defendant.

Subsequently, on May 17, 2004, Dr. Villasan filed a motion to dismiss, arguing that because he was an employee of UTMB and because UTMB filed a motion to dismiss, the trial court had a mandatory duty to dismiss him. On June 28, 2004, Dr. Villasan filed an amended request to dismiss and alternatively, a motion for summary judgment, re-asserting that section 101.106(e) mandated the trial court's dismissal of the O'Rourkes' claims. The O'Rourkes responded to Dr. Villasan's amended motion, arguing that: (1) Dr. Villasan's motion was moot because they dismissed UTMB; (2) Dr. Villasan could not rely on the statute entitling the government to have suits against its employees dismissed; (3) section 101.106(e) of the Texas Civil Practice and Remedies Code (hereinafter "Code") violated Article I, Section 13, referred to as the open courts provision of the Texas Constitution; and (4) their prior suit against Dr. Villasan for negligence in federal court filed on May 29, 2003 made the amendments to section 101.106(e) inapplicable to their state suit filed on September 22, 2003. As evidence of the federal suit, the O'Rourkes attached a copy of the first page of the complaint filed in federal court.

On August 30, 2004, the O'Rourkes filed their Second Amended Original Petition, but made no material changes in any of their negligence allegations. On that same date, the trial court conducted a hearing and orally announced that it intended to deny the relief requested by Dr. Villasan. On September 9, 2004, the trial court entered its written order denying Dr. Villasan's requested dismissal and request for summary judgment, without entering findings of fact or conclusions of law.

**Statutory History and Construction**

Because it is relevant to the resolution of the questions presented, we set out the full text of Code section 101.106 under which Dr. Villasan asserts a right to have the claims against him dismissed:

§ 101.106. Election of Remedies

(a) The filing of a suit under this chapter against a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter.

(b) The filing of a suit against any employee of a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against the governmental unit regarding the same subject matter unless the governmental unit consents.

(c) The settlement of a claim arising under this chapter shall immediately and forever bar the claimant from any suit against or recovery from any employee of the same governmental unit regarding the same subject matter.

(d) A judgment against an employee of a governmental unit shall immediately and forever bar the party obtaining the judgment from any suit against or recovery from the governmental unit.

(e) If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit.

(f) If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against

the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

TEX. CIV. PRAC. & REM.CODE ANN. § 101.106 (Vernon Supp.2005).

Revisions to this Code section in 2003 were part of a comprehensive effort by the Legislature to reform the tort system in Texas and part of a bill commonly referred to as House Bill Four. With respect to litigation against governmental entities, the revisions seek to simplify litigation by advancing to the filing of the original petition the plaintiff's final decision regarding whether the government official acted in the general scope of employment, rather than allowing plaintiffs to pursue alternative theories regarding the official's employment status through the trial. The statute allows the governmental employee whose conduct is alleged to have been within the scope of employment to force the plaintiff to amend the suit and name the governmental entity as the sole defendant. TEX. CIV. PRAC. & REM.CODE ANN. § 101.106(f). The statute allows the government, when both the government and the employee are sued, to force the plaintiff to drop the employee from the suit. TEX. CIV. PRAC. & REM.CODE ANN. § 101.106(e). All of these provisions, together, create a procedural right. At the election of the government or its employee, the respective defendant may force the plaintiff to proceed in Texas Tort Claims Act ("TTCA")[1] (1) suits against the gov-

ernmental entity alone in three possible circumstances: (1) when the suit is initially filed against the governmental agency alone; (2) when the suit is initially filed against both governmental agency and its employees; and (3)when the suit is initially filed against the government employee when the employee's conduct is alleged to have been within his scope of employment. *Id.* at § 101.106.

■■■■ By filing an amended petition dropping UTMB as a defendant and leaving Dr. Villasan as the sole defendant, the O'Rourkes attempt to avoid the clear intent of the statute. We hold that under Code section 101.106, the governmental agency perfects the statutory right to a dismissal of its employee upon the filing of a motion to dismiss, and the employee may subsequently rely on the duty created by the motion to require the trial judge to dismiss the claims against him. Subsequent amended pleadings by the plaintiff filed after the government's filing of its motion to dismiss the employee do not moot the right created by the filing of the motion under section 101.106.

The O'Rourkes argue that their amended petition filed after the government filed its motion to dismiss, but prior to the hearing on the motion, effectively dismissed the governmental entity as of the date it was filed, and, therefore, the parties are in the position they would have been in if the original petition had never been filed. Among other cases, they cite as authority for this argument *Chamberlain v. McReight*, 713 S.W.2d 372, 374 (Tex.Civ.App.-Beaumont 1986, writ ref'd n.r.e.). *Chamberlain* began as a suit against an oil company and its owner, and, by amended petition, the plaintiff omitted

---

1. Section 101.106 is part of the Texas Tort Claims Act. *See* TEX. CIV. PRAC. & REM.CODE ANN.

§§ 101.001–.109 (Vernon 1997 & Supp.2005).

the owner. The analysis in *Chamberlain* relies on Rule 65 of the Texas Rules of Civil Procedure promulgated by the Texas Supreme Court, and not a legislatively created statutory right. As a result, *Chamberlain,* which cites Rule 65, and the other cases cited by the O'Rourkes relying on either Rule 65 or Rule 162 (Dismissal or Non-suit) are distinguishable. None of the cases ‾cited by the O'Rourkes involve a statutory right of dismissal created by the Legislature.

Application of the Code Construction Act to section 101.106 reinforces our conclusion that we have properly interpreted this statute. When the Legislature in a statute uses the word "shall," the Code Construction Act indicates that a duty is imposed. TEX. GOV'T CODE ANN. § 311.016(2) (Vernon 2005). Section 101.106(e) provides that "the employees shall immediately be dismissed on the filing of a motion by the governmental unit." It follows, then, that at the moment UTMB filed a motion to dismiss a TTCA claim filed against both UTMB and its employee, a duty arose for the trial court to dismiss the claim against the government employee.

Our conclusion that a right attaches upon the government's filing of its motion follows from the fact that section 101.106 makes the consequences of the plaintiffs' choice in suing the governmental unit and its employee irrevocable. TEX. CIV. PRAC. & REM.CODE ANN. § 101.106(a). The term "irrevocable" is not defined by the statute, and is therefore construed according to the rules of grammar and common usage. TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 2005). "Irrevocable" is defined as "incapable of being recalled, or revoked: past recall: unalterable." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1196 (1986). The Legislature did not create any exceptions in section 101.106 allowing

TTCA claimants a‾ second election to choose the parties against whom they desired to lodge their suit. The language in the statute is crystal clear and not ambiguous.

The O'Rourkes request that we construe the statute to allow TTCA claimants two elections to determine against whom to proceed. We consider their request in light of the enactment of a comprehensive statute wherein the Legislature specifically dealt with each possible option regarding the parties to a TTCA suit: (1) when suit is filed against the governmental unit, suit or recovery against the individual employee regarding the same subject matter is barred by Code section 101.106(a); (2) when suit is filed against the government employee, suit or recovery by the plaintiff against the governmental unit regarding the same subject matter is barred absent consent of the governmental unit by Code section 101.106(b); and (3) when suit is filed against both employee and governmental unit, suit against the employee shall immediately be dismissed on the governmental unit's filing of a motion to dismiss under Code section 101.106(e). Under this statute, when TTCA claimants elect to include the governmental unit as a party to a suit, whether alone or in conjunction with a governmental employee, TTCA claimants have made an irrevocable election of remedies that they will look solely to the governmental unit for compensation for injury. TEX. CIV. PRAC. & REM.CODE ANN. § 101.106(a).

By forcing TTCA claimants to make an election on the filing of the suit, the Legislature encumbered plaintiffs' abilities under the Tort Claims Act to pursue, through trial, alternative theories at the same time—namely, that either the government employee acted within the scope of his authority, but in the alternative, and if not, then the governmental employee is

individually liable. The Legislature's apparent goal of reducing cost is enhanced by the amended statutory provisions because they narrow the issues for trial, thereby reducing the delay and expense otherwise associated with discovery related to theories no longer relevant in light of the election made by claimants on their initial filing of suit.

■ To place the statutory provision in context, we note that an injured claimant's ability to recover against the government, or its employees, in a personal injury or property damage case is limited by the doctrines of sovereign immunity and official immunity. *Univ. of Tex. Med. Branch at Galveston v. York*, 871 S.W.2d 175, 179 (Tex.1994) (governmental immunity protected UTMB from liability for its physician's failure to diagnose a broken hip); *Texas Dep't of Criminal Justice v. Miller*, 51 S.W.3d 583, 585 (Tex.2001) (Department of Criminal Justice shielded by sovereign immunity for its physician's failure to diagnose fatal meningitis); *Murk v. Scheele*, 120 S.W.3d 865, 866 (Tex.2003) (University of Texas Health Science Center's employee, a neurosurgeon, entitled to immunity for allegedly delaying spinal decompression surgery). The Texas Legislature, in enacting the Texas Tort Claims Act waived sovereign immunity "only to a limited degree." *Dallas County Mental Health v. Bossley*, 968 S.W.2d 339, 343 (Tex.1998).

■ Official immunity, as contrasted with sovereign immunity that protects the government agency, may protect individual governmental employees from liability. *DeWitt v. Harris County*, 904 S.W.2d 650, 653 (Tex.1995); *Kassen v. Hatley*, 887 S.W.2d 4, 8 (Tex.1994). "Government employees are entitled to official immunity from suit arising from the performance of their (1) discretionary duties in (2) good faith as long as they are (3) acting within the scope of their authority." *City of Lan-caster v. Chambers*, 883 S.W.2d 650, 653 (Tex.1994). "The purpose of official immunity is to insulate the functioning of government from the harassment of litigation, not to protect erring officials." *Kassen*, 887 S.W.2d at 8 (citing *Westfall v. Erwin*, 484 U.S. 292, 295, 108 S.Ct. 580, 98 L.Ed.2d 619 (1988)). "Common law official immunity is based on the necessity of public officials to act in the public interest with confidence and without the hesitation that could arise from having their judgment continually questioned by extended litigation." *Ballantyne v. Champion Builders, Inc.*, 144 S.W.3d 417, 424 (Tex.2004).

■ With respect to medical decisions made by employees of governmental agencies, it appears that a TTCA claimant's initial choice as to the proper parties may be a crucial decision because it is irrevocable. Official immunity does not necessarily extend to any and all medical decisions made by medical professionals employed by governmental agencies. *Kassen*, 887 S.W.2d at 11–12 (government-employed physicians may not be immune from tort liability arising from their negligent exercise of medical discretion).

■ Since the remedy is affected by the TTCA claimant's initial decision regarding who should be made a party in a TTCA suit under the amended provisions of section 101.106, the initial irrevocable decision in a suit involving government-employed medical professionals is critical. If the complaint alleges the government-employed medical professional negligently exercised medical discretion, and does not fall within the limited waiver of immunity under the TTCA, it appears that under section 101.106 the complaint should be made against the medical professional alone, and not the governmental agency. Before filing suit, a claimant considering a TTCA claim must carefully consider

whether to allege that the medical decision in such a circumstance was made within the scope of the government employee's authority. This is because, in general, a governmental agency is immune from medical negligence complaints, unless the complaint falls within the limited waiver provisions of the TTCA. *See Miller,* 51 S.W.3d at 587. Given the fact that an election is forced by section 101.106 at the time a TTCA claimant files suit, and the fact that the initial decision is irrevocable, the initial decision may determine the claimant's ultimate success or failure.

Section 101.106, as amended, assumes that when the government agency is sued alone, or is sued together with the government's employees, the theory of recovery will fall within the provisions of the TTCA making the government employees unnecessary parties to the suit.

Section 101.106 creates a procedure in such situations to allow government employees sued under these circumstances to quickly and easily obtain their removal as parties from these suits. Because Section 101.106 preserves injured claimants' rights to obtain a remedy under the limited circumstances where the TTCA waives immunity and does not prohibit common law claims that are not subject to official immunity defenses, the Code's election of remedies provisions neither enlarge nor constrict the potential recovery of claimants injured by actions of government employees. While electing to bring a TTCA claim rather than a common law medical negligence claim may have consequences due to the Legislature's policy decision to make the decision irrevocable, elections of remedies among competing compensation schemes for injured claimants are not unknown to Texas law. For example, injured parties my elect to proceed as compensation claimants under the Worker's Compensation Act, but in so doing waive

their rights to proceed at common law. For that reason, in *Medina v. Herrera,* 927 S.W.2d 597, 598–599 (Tex.1996), the Texas Supreme Court held that an employee's intentional tort claim against his employer was barred as a matter of law by his election of a worker's compensation remedy.

■■■■■■ The Legislature is empowered to define when, and under what terms, it desires to waive sovereign immunity from common law claims. *See Texas Natural Resource Conservation Comm'n v. IT–Davy,* 74 S.W.3d 849 (Tex.2002). Injured claimants may still opt to proceed on viable common law claims against individual governmental employees, as common law claims are not proscribed by the amended statutory provisions of section 101.106. If claimants choose to pursue common law claims against government employees, they are opting out of their TTCA remedy.

In the trial court, and on appeal, all of the evidence showed that Dr. Villasan was an employee of UTMB. By suing both UTMB and Dr. Villasan, the O'Rourkes elected to prove in their case that Dr. Villasan's medical decision was within the scope of his employment with UTMB. In order to recover for the actions of an official in the scope of his duties, claimants in a TTCA suit in which they join the governmental agency must prove allegations that come within the limited waiver of immunity provided by the Act. TEX. CIV. PRAC. & REM.CODE ANN. § 101.021 (limiting the liability of a governmental unit from the negligent conduct of an employee to injuries arising from the operation or use of a motor-driven vehicle, or to injuries caused by the condition or use of tangible personal or real property.) The O'Rourkes sued both UTMB and Dr. Villasan when they filed their initial state court pleading. After filing an answer, UTMB filed a motion to dismiss Dr. Villasan, a procedural

right created by section 101.106(e). This provision, on the filing of the motion, created a mandatory duty on the part of the trial court to dismiss the claims against Dr. Villasan.

■ While the O'Rourkes essentially argue that Rule 65 trumps section 101.106 to allow their dismissal of UTMB without affecting their suit Dr. Villasan, that argument fails. As mandated by the Civil Practice and Remedies Code, we apply the Code Construction Act to determine the impact of section 101.106. TEX. CIV. PRAC. & REM.CODE ANN. § 1.002(Vernon 2002).

Section 311.026 of the Code Construction Act provides that when a general provision conflicts with a special provision, both provisions shall be construed, if possible, to give effect to both; but, if the conflict is irreconcilable, the special provision prevails absent exceptions not pertinent in this case. TEX. GOV'T CODE ANN. § 311.026 (Vernon 2005). The O'Rourkes' amended petition was filed pursuant to Rule 65 of the Rules of Civil Procedure, and Rule 65 is a general rule dealing with the consequences of amended pleadings. Rule 65 is not a specific rule addressing the consequences of filing amended pleadings under the TTCA.

■ Second, to the extent the Rules of Civil Procedure conflict with a statute, "the statute prevails unless the rule has been passed subsequent to the statute and repeals the statute as provided by Texas Government Code section 22.004." *Johnstone v. State*, 22 S.W.3d 408, 409 (Tex.2000). When a procedural "rule of the court conflicts with a legislative enactment, the rule must yield." *Few v. Charter Oak Fire Ins. Co.*, 463 S.W.2d 424, 425 (Tex.1971). There is a conflict between Rule 65, which states "the instrument for which it [the amended pleading] is substituted shall no longer be regarded as a part of the pleading in the record of the cause," and Code section 101.106, a recently amended statute, that makes the filing of an initial pleading irrevocable. Further, the conflict between the rule and the statute is irreconcilable because an irrevocable pleading cannot be changed or altered while the essential purpose of an amendment under Rule 65 is to allow alterations to prior pleadings.

Finally, in general, when applying rules of statutory construction the more recent enactment prevails. Since the amended provisions of section 101.106 were enacted more recently than the provisions of Rule 65, section 101.106 prevails over the rule. *See Johnstone*, 22 S.W.3d at 409.

In summary, section 101.106 is more specific than Rule 65 as applied to TTCA claims. Section 101.106 is a statute, whereas Rule 65 is not. Section 101.106 is the more recent provision between the competing provisions that the parties argue apply. Applying the rules of statutory construction guiding our resolution of the issue, we conclude that the O'Rourkes' amendments of their pleadings, although permitted by the Texas Rules of Procedure, do not trump a statutory right of dismissal that vested upon the government's filing its motion to dismiss the claims against its employee.

■ Under the pleading procedures governing this case, as modified by the Civil Practice and Remedies Code, the Legislature gave the O'Rourkes only one election to determine whether they wanted to proceed under a TTCA theory or under other potential theories. They elected to proceed under a TTCA theory. The statutes governing TTCA suits make the trial judge's responsibility to dismiss the government's employee mandatory when the government files a motion requesting that the claims against its employee be dismissed. The trial judge's duty under

these circumstances is not optional. We reject the O'Rourkes' contention that Dr. Villasan did not have standing to complain about the trial judge's violation of a mandatory duty to dismiss him from the suit.

**Construction of Enabling Language**

██    Alternatively, the O'Rourkes argue that their suit in federal court, filed prior to the effective date of the amendment to the Texas Civil Practice and Remedies Code, avoids the application of the amended provisions of Code section 101.106 to their state suit. We set out the enabling language of Code section 101.106, which provides:

> Except as otherwise provided in this section or by a specific provision in an article, this Act applies only to an action filed on or after the effective date of this Act. An action filed before the effective date of this Act, including an action filed before that date in which a party is joined or designated after that date, is governed by the law in effect immediately before the change in law made by this Act, and that law is continued in effect for that purpose.

Act of June 2, 2003, 78th Leg., ch. 204, § 23.02(d), 2003 Tex. Gen. Laws 847, 899.

Clearly, the suit filed in state court by the O'Rourkes on September 22, 2003 is an "action" contemplated by the Legislature in enacting the statute, and the state suit was filed after the date the amended provisions went into effect on September 1, 2003. However, prior to filing suit in state court, the O'Rourkes filed a suit in federal court on May 29, 2003 against the United States of America, The University of Texas Medical Branch, Galveston, Beth Serrano, M.D., Robert Leland Hardy, D.O., Antonio Villasan, M.D., and E. Barby, P.A. The only evidence in the trial court's record regarding the federal suit was the first page of the complaint. From the federal complaint, we can determine that this action was a Federal Tort Claims Act case brought under Title 28, section 1346(b) of the United States Code, that there is an identity of plaintiffs between the O'Rourke's federal action and the O'Rourke's state action, and that there are defendants in the federal action that are not included in the state action. From the first page of the federal complaint, we cannot determine: (1) the nature of the complaints against the defendants beyond the fact that the O'Rourkes asserted a claim under the Federal Tort Claims Act; (2) the date their claims arose; or (3) whether their claims in the federal suit involve the same subject matter as those they asserted in the state action. Although as an appendix to their brief the O'Rourkes attached a copy of the federal court's order dismissing their suit from federal court, and additional information concerning the subject matter of their federal suit is available therein, the order was not before the trial court and we therefore cannot consider it. *See Carlton v. Trinity Univ. Ins. Co.*, 32 S.W.3d 454, 458 (Tex. App.-Houston [14th Dist.] 2000, pet. denied).

The term "action" is not defined by the statute. Dr. Villasan argues that the federal and state suits are not the same actions. Dr. Villasan argues that the term "action" means "suit." Dr. Villasan contends that since the state suit was filed after the effective date of section 101.106, and because the state suit is separate and distinct from the federal suit, the amended provisions of section 101.106(3) apply to the later filed state suit. Dr. Villasan cites *Thomas v. Oldham*, 895 S.W.2d 352 (Tex. 1995). In *Thomas*, the Texas Supreme Court analyzed the meaning of the word "action" in connection with a prior version of section 101.106, and stated that the "term 'action' is generally synonymous

with 'suit,' which is a demand of one's rights in court." *Thomas,* 895 S.W.2d at 356; *see also Bradley v. Etessam,* 703 S.W.2d 237, 241 (Tex.App.-Dallas 1985, writ ref'd n.r.e.) (action in section 10.01 [of article 4590i] means "suit."); *United Production Corp. v. Hughes,* 137 Tex. 21, 152 S.W.2d 327, 330 (1941) (using "suit" and "action" synonymously).

The O'Rourkes, on the other hand, argue that they filed an "action" against Dr. Villasan before September 1, 2003, and that the term "action" is not confined to a specific suit. The O'Rourkes cite *Bates v. Tesar,* 81 S.W.3d 411, 428 (Tex.App.-El Paso 2002, no pet.) for the proposition that "[t]he Legislature's adoption of . . . general savings provisions indicates a general legislative policy that the repeal or amendment of any statute shall not affect the prior operation of the statute nor extinguish any liability incurred or affect any right accrued or claim arising before the repeal or amendment takes effect." They argue that their action need only involve the same subject matter to relate back and avoid the revisions to section 101.106. The O'Rourkes assert that the savings provision enacted by the Legislature with section 101.106 avoids an ex post facto application of the election of remedies provisions of the statute to this case. The O'Rourkes, however, cite no cases holding that the Legislature intended general savings provisions such as that enacted with section 101.106 to operate in a manner to allow separately filed suits to relate back to earlier filed suits and thereby avoid the application of statutory amendments.

In analyzing the savings provision of section 101.106, we look to the common meaning of the term "action," as required by section 311.011 of the Code Construction Act. The Black's Law Dictionary definition of "action" states "The term [action] in its usual legal sense means a lawsuit brought in a court; a formal complaint within the jurisdiction of a court of law." BLACK'S LAW DICTIONARY 28 (6th ed.1990). "Action" is defined in Webster's Dictionary as "a deliberative or authorized proceeding." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 21 (1986). Based upon the common usage of "action" as reflected by Black's, Webster's and prior opinions, we agree that "action" as it is commonly used in the context of a savings provision means "suit." Since the federal suit is a separate proceeding from the state suit, it follows that it is not the same action.

We perceive the question of whether both a federal and state suit assert the same causes of action as being different from the question of whether they are the same action. They are clearly different actions in the sense they are filed in separate jurisdictions.

The parties bring no statutes to our attention wherein the Legislature expresses an intent to "save" a later filed state suit from the application of an amended statute by virtue of the earlier filing of a federal suit, and we have found none. Since the state suit is "an action" filed after September 1, 2003, and because we find no specific provision allowing the state suit to relate back to an earlier filed federal suit for purposes of saving the state suit from the amended provisions of this statute, we hold the amended provisions of section 101.106 apply to the state suit filed after the amended provisions went into effect.

## Trial Record

■ A separate and alternative basis to hold that the federal filing does not avoid the application of the amended provisions of the statute exists on the trial court's record. Even if we were to accept the O'Rourkes' argument that the savings provision of section 101.106 should be in-

terpreted to allow a relation back doctrine to operate, a proposition that we have rejected, the O'Rourkes recognize in their brief that for such a doctrine to apply both the federal and state suits must involve the same subject matter. In the trial court the O'Rourkes failed to establish an identity between the subject matter of the federal suit and that of the state suit. From the first page of their federal petition, which is all the evidence regarding the subject matter of the federal suit before the judge in the state case, we cannot determine that the subject matter of the claims asserted in the federal suit are the same as those the O'Rourkes assert in state court.

Even if we were to accept the argument that a relation back doctrine should be created in these circumstances, it would be the claimants' burden to plead and to produce evidence to show that the doctrine applies. *See Willis v. Maverick,* 760 S.W.2d 642, 647 (Tex.1988) (burden on plaintiff to plead and prove exceptions to application of statute of limitation); *Weaver v. Witt,* 561 S.W.2d 792, 794 n. 2 (Tex. 1977) (suspending operation of a statute of limitations is the burden of the party pleading suspension); *Wise v. Anderson,* 163 Tex. 608, 359 S.W.2d 876, 880–81 (1962) (burden of pleading and proving that defendant was absent from state to avoid limitations is on the plaintiff). Thus, even if a relation back doctrine applies, because the evidence in the trial court fails to show an identity between the subject matter of the suit in federal court and the suit in state court, the trial judge erred in denying Dr. Villasan's motion to dismiss.

### Application of Amended Statute Not Prohibited

■ Our interpretation of the savings provision does not create a prohibited retroactive application of law. The amended provisions of section 101.106 apply to "an action filed" on or after September 1, 2003, and do not affect actions filed prior to September 1, 2003. The amendments operate prospectively on suits filed after the amendments, and do not annul or affect prior filings.

■ We generally presume that the Legislature intends an amendment to operate prospectively and not retroactively. *Subaru of America, Inc. v. David McDavid Nissan, Inc.,* 84 S.W.3d 212, 219 (Tex. 2002). However, this general rule is inapplicable where the amendment is procedural or remedial. *Id.* As explained above, the election of remedies aspect of the amended section 101.106 does not enlarge or diminish the potential recovery of a claimant entitled to recover under the TTCA. Because the amendments do not change the amount of recovery or the right to recover, the amendment is procedural. *See generally Blonstein v. Blonstein,* 831 S.W.2d 468, 472 (Tex.App.-Houston [14th Dist.] 1992, writ denied) ("A procedural amendment is one which effects the manner in which a suit is conducted with application to pleading, evidence, etc. Procedure involves every step in a trial or appeal.... Substantive law on the other hand, relates to the rules and principles which fix and declare the primary rights of individuals and provides the type of remedy available in case of invasion of those rights." [citations omitted] ) The amendments are also remedial, given the Legislature's intent to simplify litigation against governmental entities under the TTCA. "A remedial matter pertains to the practice and procedure by which substantive law is made effective." *Id.* Therefore, the general rule proscribing the retroactive application of amendments of statutes do not apply to the type of amendments made to section 101.106.

Moreover, "[a] retroactive application of a statute only violates our Constitution if, when applied, it takes away or impairs vested rights acquired under existing law." *Subaru*, 84 S.W.3d at 219. The amendments to section 101.106 of the TTCA do not impair vested property rights, because at common law the government was immune from suit. Claimants' rights to recover for injuries by government employees for actions in the scope of their employment are allowed by virtue of the sovereign's waiver of immunity under the TTCA. *See City of Tyler v. Likes*, 962 S.W.2d 489, 494 (Tex.1997) ("it is important to remember that the Tort Claims Act does not create a cause of action; it merely waives sovereign immunity as a bar to a suit that would otherwise exist.") As such, the "rights" are purely statutory.

In general, persons do not have a vested right in the continuance of present law in relation to a particular subject; the Legislature may change laws so long as they do not destroy or prevent the adequate enforcement of vested rights. *See Subaru*, 84 S.W.3d at 219. In *City of Dallas v. Trammell*, 129 Tex. 150, 101 S.W.2d 1009 (1937), the Texas Supreme Court explained that a statutory right created to receive payments from a state pension plan was subordinate to the right of the Legislature to completely abolish or reduce payments under the plan. *See* 101 S.W.2d at 1013. This rule, that the government may change rules that have not vested in statutorily created government benefits plans, remains a viable doctrine. *Reames v. Police Officers' Pension Bd. of City of Houston*, 928 S.W.2d 628, 632 (Tex. App.-Houston [14th Dist.] 1996, no writ).

On the date the statute went into effect, September 1, 2003, the O'Rourkes had the right to sue either Dr. Villasan or UTMB and to assert claims either at common law or under the TTCA. Therefore, the amended statute is not retroactive in the sense that it prohibited or barred prior claims by virtue of its enactment. Even if it arguably affected TTCA claimants' options of proceeding against both the government entity and the government entity's employee and asserting alternative theories of recovery, we see no reason to treat procedural provisions under the TTCA differently from procedural rules under government pension plans regarding whether such procedural rules create vested rights.

In summary, the O'Rourkes' options with respect to procedurally posturing their case under the pre-amended statutory scheme of the TTCA were not vested rights. Because they had no vested right in a statutory procedure under the pre-amended version of the TTCA to proceed against both Dr. Villasan and UTMB, it follows that the Legislature could amend and alter the procedures under section 101.106 without running afoul of Article I, section 16 of the Texas Constitution.

## No Open Courts Violation

The O'Rourkes also contend that the amendments to section 101.106, if applied to their state suit against Dr. Villasan, violate the open courts guarantee of the Texas Constitution. That guarantee provides, ". . . All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law." TEX. CONST. art. I, § 13. Because the provision affects common law claims, and not statutory claims, the provision does not apply to the TTCA. In Thomas, the Texas Supreme Court explained:

The Tort Claims Act broadened, rather than restricted, an injured party's remedies. At common law, municipalities performing governmental functions were completely immune from liability. The Tort Claims Act created a limited

waiver of that immunity. Although a plaintiff who pursues the statutory remedy against the government may lose his or her common law remedy against the employee, the plaintiff is not required to follow this course. He or she may still opt to pursue the full common law remedy against the responsible employee, foregoing or postponing any attempt to recover from the government. Section 101.106 thus does not violate the Texas Constitution.

*Thomas,* 895 S.W.2d at 357–58. The Thomas Court rejected a claimant's challenge under the open courts provision to an earlier version of section 101.106 because Article I, section 13 of the Texas Constitution prohibits only the Legislature's limiting common law causes of action, and a TTCA claim did not exist at common law. *Id.* For the same reasons, the O'Rourkes' open courts argument under amended Code section 101.106 fails.

### No Waiver

Finally, the O'Rourkes invite us to affirm the trial court's decision because "the party challenging the denial [of Dr. Villasan's motion to dismiss] has failed to challenge an alternate ground for the court's ruling." They argue that because their open courts argument was urged in the trial court as a ground to deny Dr. Villasan's motion to dismiss, and was not challenged in the trial court, we are required to affirm the ruling of the trial court. As authority for this proposition, they cite *Stephens v. Dolcefino,* 126 S.W.3d 120, 130 (Tex.App.-Houston [1st Dist.] 2003, pet. filed). However, our review of *Stephens* reveals that it stands for the proposition that an appellate court can find that a party, *on appeal,* waived an issue by inadequately briefing the issue. Stephens does not stand for the proposition that a waiver occurs where a response to a summary judgment or motion to dismiss contains arguments to which the other side fails to object. *Id.*

Dr. Villasan, on appeal, adequately briefed why the open courts provision is not applicable to a TTCA case. We decline the invitation to create a rule that a summary judgment movant must file an objection to a summary judgment response in order to preserve the issue for appeal.

### Conclusion

In conclusion, we sustain Dr. Villasan's first issue, and hold that he was entitled to dismissal as a matter of law under the provisions of section 101.106(e) of the Texas Civil Practice and Remedies Code. We reverse the trial court's order denying Dr. Villasan's motion to dismiss and render judgment dismissing the claims against Dr. Villasan.

REVERSED AND RENDERED.