Rose TEJADA, as Next Friend of
Kaylee Tejada and Kelsey
Tejada, Appellant,

v.

Thomas F. ROWE, M.D., Thomas F.
Rowe, M.D., P.A., and Jessica Linhart Demay, M.D., Appellees.

No. 09–06–025 CV.

Court of Appeals of Texas,
Beaumont.

Submitted Sept. 28, 2006.

Decided Nov. 22, 2006.

Ralph D. Huston, The Huston Law Firm, Houston, for appellant.

George W. Vie III, Mills Shirley LLP, Galveston, Greg Abbott, Atty. Gen., Barry R. McBee, First Asst. Atty. Gen., Edward D. Burbach, Deputy Atty. Gen. for Litigation, Nelly R. Herrera, Chief, Tort Litigation Division, S. Ronald Keister, Asst. Atty. Gen., Austin, for appellees.

Before McKEITHEN, C.J., GAULTNEY and KREGER, JJ.

## OPINION

STEVE McKEITHEN, Chief Justice.

Appellant Rose Tejada [1] sued appellees Thomas F. Rowe, M.D., Thomas F. Rowe,

---

1. Tejada sued as next friend of her daughters, Kaylee and Kelsey.

M.D., P.A.,[2] Jessica Linhart DeMay, M.D., and other defendants for medical malpractice that allegedly occurred during the delivery of Tejada's twin daughters. Rowe and DeMay filed motions to dismiss. *See* Tex. Civ. Prac. & Rem.Code Ann. § 101.106(f) (Vernon 2005). The trial court granted the motions to dismiss, and Tejada filed this appeal. We affirm.

## BACKGROUND

After an emergency room visit during approximately the thirty-fourth week of her pregnancy with twins, Rose Tejada was admitted to Park Place Hospital. Tejada's diagnosis upon admission was pregnancy-induced hypertension. Tejada was also found to be suffering from gestational diabetes. Approximately six days later, Tejada was transferred to the University of Texas Medical Branch—Galveston ("UTMB"), where Rowe was the attending obstetrician and DeMay was a resident. Pitocin was administered to Tejada to augment her labor. The first twin, Kaylee, was delivered with forceps from a right occiput transverse position. The second twin, Kelsey, was delivered "by internal podalic version, breech extraction and forceps for the aftercoming head." Both twins were subsequently diagnosed with cerebral palsy.

Tejada sued Rowe, DeMay, and other defendants for medical malpractice. Tejada's petition asserted that Rowe and DeMay were negligent in failing to appropriately monitor and evaluate the fetal heart rates; failing "to accurately assess and intervene in a timely manner;" "failing to identify risk factors during labor;" "failing to monitor maternal and/or fetal condi-

tion;" "[i]nadequate patient assessment;" "failing to notify physician appropriately and/or in a timely manner;" "failing to properly and adequately supervise the nursing staff ...;" "failing to assign and provide an adequate nursing staff ...;" "failing to use sound nursing judgments;" and "permitting a resident or intern to deliver the bab[ies] without proper instruction, training or supervision[.]"

Attached to Tejada's petition were reports and curricula vitae from two experts, Dr. Carlos Cunado and Dr. Ronald Caplan. Dr. Cunado's one-page report stated that he was currently treating Kaylee and Kelsey for cerebral palsy. Dr. Cunado's report also explained as follows:

> Based on reasonable medical probability, it is my opinion that the cerebral palsy of both the Tejada twins, Kaylee and Kelsey, is the proximate result of the mechanical trauma and perinatal hypoxia suffered by them during delivery. [T]he mechanical trauma and hypoxia cause irreversible brain injury which goes on to manifest as cerebral palsy.

Dr. Caplan's much more lengthy report asserted that Rowe and DeMay were negligent in performing a forceps rotation on Kaylee; failing to perform a cesarean section; failing to perform an episiotomy; failing to utilize appropriate anesthesia; performing a traumatic delivery; inappropriately responding to fetal heart decelerations and the presence of meconium; performing a breech extraction "with internal podalic version and forceps to the aftercoming head" on Kelsey; and augmenting Tejada's labor with Pitocin. Dr. Caplan's report concluded as follows:

> The use of Pitocin increased the force of the uterine contractions to which these

---

**2.** We will refer to Thomas Rowe, M.D. and his professional association collectively as "Rowe."

babies were being subjected. Pitocin should not have been used, nor should its dosage have been increased. In fact, its use should have been stopped.

These deviations from accepted standards of medical care were directly responsible for the sequelae experienced by Kaylee Tejada ... and Kelsey Tejada. ...

Rowe and DeMay filed motions to dismiss on the grounds that Tejada's claims could have been brought against UTMB because Rowe and DeMay were acting in their official capacities as government employees. *See* Tex. Civ. Prac. & Rem.Code Ann. § 101.106(f). DeMay's motion was verified, and Rowe's motion included an affidavit which averred that he was an employee of UTMB, he received his salary from the State of Texas, and all of his interactions with Tejada were within the general scope of his employment with UTMB. The trial court granted both motions to dismiss, and Tejada filed this appeal, in which she presents four issues for our review.

### ISSUES ONE AND THREE

In her first issue, Tejada asserts that the trial court erred by dismissing her case because Tex. Civ. Prac. & Rem.Code Ann. § 101.106(f) "does not apply to cases which are not filed under the Texas Tort Claims Act." Tejada maintains that if a plaintiff does not sue a governmental entity, " § 101.106(f) does not prohibit a lawsuit against a state employee in his or her individual capacity." In her third issue, Tejada contends the trial court erred in dismissing the case because Rowe and DeMay failed to meet their burden of proving that Tejada's claims could have been brought against UTMB. We address issues one and three together.

■ We first address appellees' contention that Tejada waived review of these issues on appeal by failing to file a response to the motions to dismiss in the trial court. At oral argument the parties agreed that Tejada's counsel participated in the hearing on the motions to dismiss. Further, the statute does not require the filing of a written response. *See* Tex. Civ. Prac. & Rem.Code Ann. § 101.106 (Vernon 2005); *compare* Tex.R. Civ. P. 166a(c) (Rule governing summary judgments provides that "[i]ssues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal."). Therefore, we find that Tejada's counsel's participation in the hearing sufficiently apprised the trial court of Tejada's arguments regarding the motion to dismiss. *See* Tex.R.App. P. 33.1(a).

■ Section 101.106(f) of the Tort Claims Act provides as follows:

(f) If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

Tex. Civ. Prac. & Rem.Code Ann. § 101.106(f). Tejada asserts that the Tort Claims Act does not apply to this case because she seeks to recover against Rowe and DeMay in their individual capacities under common law theories of recovery,

and she did not sue a governmental unit. The terms of section 101.106(f) do not restrict its application to cases in which the governmental unit has been named as a defendant. In fact, section 101.106(f) requires that the suit against the employee must be dismissed unless the plaintiff files amended pleadings dismissing the employee and substituting the governmental unit within thirty days after the employee files a motion to dismiss. *See id.; see also* Tex. Gov't Code Ann. § 311.016(2) (Vernon 2005) (" 'Shall' imposes a duty."). In addition, section 101.106(e) expressly addresses lawsuits filed against both a governmental unit and its employees. *See* Tex. Civ. Prac. & Rem.Code Ann. § 101.106(e) (Vernon 2005); *see generally* Tex. Gov't Code Ann. § 311.011(a) (Vernon 2005) (Phrases shall be read in context.).

The language of section 101.106(f) vitiates Tejada's argument that she may elect to pursue claims against Rowe and DeMay individually if she does not sue a governmental unit. In support of this argument, Tejada cites *Villasan v. O'Rourke*, 166 S.W.3d 752, 761 (Tex.App.-Beaumont 2005, pet. filed) ("Injured claimants may still opt to proceed on viable common law claims against individual governmental employees, as common law claims are not proscribed by the amended statutory provisions of section 101.106."), and *Waxahachie Independent School District v. Johnson*, 181 S.W.3d 781, 787 (Tex.App.-Waco 2005, pet. filed) ("[B]ecause section 101.106(b) omits 'under this chapter' it also applies to employees sued in their individual capacities, as employees sued in this capacity are usually sued under the common law."). However, *Villasan* dealt with Tex. Civ. Prac. & Rem.Code Ann. § 101.106(e), not subsection (f), and *Waxahachie* dealt with subsection (b). *See Villasan*, 166 S.W.3d at 756; *Waxahachie*,

181 S.W.3d at 786–87. Unlike subsections (b) and (e), subsection (f) explicitly provides that if a claimant sues a government employee "based on conduct within the general scope of that employee's employment and if [the claim] could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only." Tex. Civ. Prac. & Rem.Code Ann. § 101.106(b), (e), (f).

We conclude that Tex. Civ. Prac. & Rem.Code Ann. § 101.106(f) evidences the Legislature's intent to provide a procedure for dismissing government employees and substituting the governmental entity in cases in which only employees were named as defendants. Therefore, we now turn to the question of whether Tejada's claims were based on conduct within the general scope of appellees' employment. *See id.*

According to Tejada's petition and the expert reports attached thereto, her claims against Rowe and DeMay arise from the treatment they provided during labor and the deliveries of Kaylee and Kelsey. The affidavit attached to Rowe's motion to dismiss averred that Rowe was an employee of UTMB, and "[a]ll of my interaction with the patient, Rose Tejada, including the delivery of her twins, was within the general scope of my employment with UTMB." DeMay's verified motion to dismiss asserted that she was an employee of UTMB (and therefore, the State of Texas) when she treated Tejada, and she provided medical care to Tejada in her official capacity as an employee of UTMB. Tejada's pleadings, the expert reports attached thereto, and the evidence provided with appellees' motions to dismiss, establish that Tejada's claim was based on conduct within the general scope of appellees' em-

ployment with UTMB. *See* Tex. Civ. Prac. & Rem.Code Ann. § 101.106(f). Therefore, we find Rowe and DeMay met their burden of proof under section 101.106(f). *See id.*

■ Lastly, we determine whether Tejada's claims "could have been brought under this chapter against the governmental unit[.]" *Id.* Section 101.021 of the Tort Claims Act provides that a governmental unit is liable for "personal injury . . . so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." Tex. Civ. Prac. & Rem.Code Ann. § 101.021(2) (Vernon 2005). The expert reports Tejada filed with her petition assert that the use of Pitocin to augment Tejada's labor, as well as the use of forceps in the deliveries of Kaylee and Kelsey, caused the brain injuries suffered by Kaylee and Kelsey. Both the Pitocin and the forceps are tangible personal property, the use of which Tejada asserts caused the twins' injuries.[3] *See id.* Therefore, we find Tejada's claim could have been brought against the governmental entity, UTMB. Having determined that the pleadings and evidence demonstrated that Tejada's claim arose from the general scope of appellees' employment with UTMB and could have been brought against UTMB, we find the trial court did not err in dismissing Rowe and DeMay. *See* Tex. Civ. Prac. & Rem.Code Ann. § 101.106(f). We overrule issues one and three.

### Issue Two

■ In issue two, Tejada asserts the trial court erred by dismissing her claim

with prejudice. However, Tejada's brief contains no argument or authorities in support of this contention. Therefore, Tejada has waived this issue. *See* Tex.R.App. P. 38.1(h); *Abdelnour v. Mid Nat'l Holdings, Inc.*, 190 S.W.3d 237, 241–42 (Tex.App.-Houston [1st Dist.] 2006, no pet.) ("Issues on appeal are waived if an appellant fails to support his contention by citations to appropriate authority. . . . [Tex.R.App. P. 38.1] does not prohibit an appellant from making a novel argument for which there is no authority 'directly on point.' However, a novel contention must be grounded in analogous case law or provide a relevant jurisprudential framework for evaluating the claim."). We overrule issue two.

### Issue Four

■ In issue four, Tejada asserts that the trial court erred in dismissing her case because Tex. Civ. Prac. & Rem.Code Ann. § 101.106(f) "unreasonably restricts Appellant's access to the courts in violation of the open courts and due process guarantees of art. I, § 13 of the Texas Constitution." The record reflects that this claim was not raised before the trial court. Therefore, Tejada did not preserve this issue for our review. *See* Tex.R.App. 33.1(a); *Southwestern Elec. Power Co. v. Grant*, 73 S.W.3d 211, 222 (Tex.2002) ("A litigant must raise an open-courts challenge in the trial court."). We overrule issue four and affirm the trial court's judgment.

AFFIRMED.

DAVID GAULTNEY, Justice, concurring.

Appellant's complaints were not preserved for appellate review. Tex.R.App.

---

**3.** *Compare Franka v. Velasquez*, No. 04–06–00190–CV, 2006 WL 2546535, —— S.W.3d —— (Tex.App.-San Antonio Sept.6, 2006, no pet. h.) (When vacuum extractor was used to deliver baby's head, and baby suffered shoulder injury, sovereign immunity was not waived because the vacuum extractor did not cause the alleged injury.)

P. 33.1. No reporter's record has been filed, and we do not know whether appellant presented any of the issues to the trial court. Nothing in the clerk's record indicates an objection, response, motion, or presentation of any kind was made in response to appellees' motions to dismiss, or even after the dismissal orders were signed. I would not reach the merits of the issues. *See* Tex.R.App. P. 33.1. I respectfully concur only in the affirmance of the trial court's judgment.