**Dhiren S. SHETH, M.D., Appellant,**

v.

**Donald C. DEAREN, Appellee.**

**No. 14–07–00004–CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

May 24, 2007.

Nancy Bolin Broaddus, Houston, for appellant.

John A. Davis, Houston, for appellee.

## OPINION

ADELE HEDGES, Chief Justice.

Appellant, Dhiren S. Sheth, M.D. ("Dr. Sheth") brings this appeal following the trial court's denial of his motion to dismiss pursuant to Section 101.106(f) of the Texas Tort Claims Act. In his sole issue, Dr. Sheth argues that the trial court erred in denying his motion to dismiss. We reverse and remand.

### I. BACKGROUND

In September of 2003, appellee, Donald C. Dearen, sustained a hip fracture and was taken into surgery at Memorial Hermann Hospital. Dearen was treated by Dr. Sheth, an orthopedic surgeon practicing at the University of Texas Health Science Center at Houston ("UTHSCH"). As part of Dr. Sheth's appointment at UTHSCH, he provided medical treatment to patients at Memorial Hermann Hospital.

In treating Dearen's hip fracture, Dr. Sheth performed surgery which involved the implantation of an orthopedic hardware device, known as a "short Gamma nail," into Dearen's body.[1] As a result of this surgery, Dearen brought suit alleging personal injuries caused by Dr. Sheth's negligence. Dr. Sheth filed a motion to dismiss, which the trial court denied.

### II. ANALYSIS

In Dr. Sheth's sole issue, he contends that the trial court erred in denying his motion to dismiss pursuant to Section 101.106(f) of the Texas Tort Claims Act. Section 101.106(f) provides that:

> If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's mo-

1. It is not clear from the record where exactly the Gamma nail was placed.

tion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

TEX. CIV. PRAC. & REM.CODE § 101.106(f). In this case, Dearen does not dispute that his suit was based on conduct within the general scope of Dr. Sheth's employment with UTHSCH. The parties disagree, however, as to whether Dearen's suit could have been brought under the Tort Claims Act (TCA) against UTHSCH.

 In Texas, a governmental agency is not liable for the torts of its officers or agents unless there is a specific legislative waiver of immunity. *Lowe v. Texas Tech Univ.*, 540 S.W.2d 297, 298 (Tex.1976). Sovereign immunity can only be waived by clear and unambiguous language. *Univ. of Tex. Med. Branch at Galveston v. York*, 871 S.W.2d 175, 177 (Tex.1994). The Texas Legislature enacted the TCA to waive sovereign immunity in limited circumstances. *See Kerrville State Hosp. v. Clark*, 923 S.W.2d 582, 584 (Tex.1996).

 As the movant on the motion to dismiss, it is Dr. Sheth's burden to point to the facts evidencing that Dearen's suit could have been brought against UTHSCH. *See Phillips v. Dafonte*, 187 S.W.3d 669, 677 (Tex.App.-Houston [14th Dist.] 2006, no pet.) ("We find that the doctors failed to establish that Dafonte's suit is one that could have been brought against UTMB."); *Tejada v. Rowe*, 207 S.W.3d 920, 923 (Tex.App.-Beaumont 2006, pet. filed) ("We find that [the movants] met their burden of proof under section 101.106(f)."); *Williams v. Nealon*, 199 S.W.3d 462, 466 (Tex.App.-Houston [1st Dist.] 2006, pet. filed) ("[T]he doctors have not shown that Williams's claims could have been brought against UTHSCH un-

der the Texas Tort Claims Act."). The primary source of those facts are the plaintiff's pleadings, however, other evidence is proper if relevant to the issue of waiver of sovereign immunity. *See Tex. Natural Res. Conservation Comm'n v. White*, 46 S.W.3d 864, 868 (Tex.2001) ("We must examine the plaintiff's pleadings and, to the extent relevant to the jurisdictional issue, the evidence submitted by the parties in order to determine if the government waived sovereign immunity."); *see also Phillips*, 187 S.W.3d at 676–77 (analyzing plaintiff's petition as part of its 101.106(f) analysis); *Tejada*, 207 S.W.3d at 922–23 (reviewing, as part of its 101.106(f) analysis, plaintiff's petition and two expert reports attached to that petition in deciding whether plaintiff's suit could have been brought under the TCA); *Franka v. Velasquez*, 216 S.W.3d 409, 412 (Tex.App.-San Antonio 2006, pet. filed) (reviewing "the petition and the evidence presented" in disposing of appellant's 101.106(f) issue). In determining whether the plaintiff alleges facts supporting a finding of waiver of sovereign immunity, we look at the substance of the plaintiff's pleadings rather than his characterizations of them. *See Phillips*, 187 S.W.3d at 676–77 (looking at "the real substance of [plaintiff's] petition" in determining, as part of its 101.106(f) analysis, whether plaintiff's claim could have been brought under the TCA); *see also Dallas County Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 343 (Tex.1998) ("The real substance of plaintiffs' complaint is that Roger's death was caused, not by the condition or use of property, but by the failure of Hillside's staff to restrain him once they learned he was still suicidal."); *Kerrville*, 923 S.W.2d at 585 ("The gravamen of their complaint is that KSH's non-use of an injectionable drug was the cause of their daughter's death."); *Univ. of Tex. Health Sci. Ctr. v.*

*Schroeder,* 190 S.W.3d 102, 106 (Tex.App.-Houston [1st Dist.] 2005, no pet.) ("Here, the gravamen of Schroeder's complaints amount to negligent supervision."). Where the facts taken from the plaintiff's pleadings are undisputed, the question of whether those pleadings support a jurisdictional finding of waiver of sovereign immunity is one of law and is thus reviewed *de novo. See Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 226 (Tex.2004) ("[W]hether undisputed evidence of jurisdictional facts establishes a trial court's jurisdiction is also a question of law."); *see also Tex. Natural Res. Conservation Comm'n v. IT–Davy,* 74 S.W.3d 849, 855 (Tex.2002) (holding that the issue of whether a party has properly alleged a valid waiver of sovereign immunity is jurisdictional and is reviewed *de novo); Waxahachie Independent School District v. Johnson,* 181 S.W.3d 781, 787 (Tex.App.-Waco 2005, pet. filed) (same); *Kelso v. Gonzales Healthcare Sys.,* 136 S.W.3d 377, 381 (Tex.App.-Corpus Christi 2004, no pet.) (same). In this case, Dr. Sheth does not dispute the facts presented in Dearen's pleadings; rather, he disputes Dearen's characterization of those facts. As a result, we apply the *de novo* standard. *See Miranda,* 133 S.W.3d at 226.[2]

Dr. Sheth argues that Dearen's suit could have been brought against UTHSCH pursuant to Section 101.021(2) of the TCA, which waives governmental immunity for "personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." Tex. Civ. Prac. & Rem.Code § 101.021(2). In his motion to dismiss, Dr. Sheth relied on Dearen's original petition, a report by Dearen's expert, and Dearen's responses to various discovery to support his contentions. Dr. Sheth contends that Dearen's pleadings allege the misuse of a device implanted into his body, which caused Dearen's injuries. We note that the plaintiff's pleadings should be the primary focus of our inquiry regarding this jurisdictional issue of waiver of sovereign immunity. *See White,* 46 S.W.3d at 868.

Dearen's expert wrote a report describing the procedure Dr. Sheth performed on Dearen. The report states that Dr. Sheth chose to stabilize Dearen's fracture by implanting a device, dubbed the "short Gamma Nail," into Dearen's body. The report further states that because the Gamma nail is short, it requires a distal interlocking screw for stability. Dearen's original petition summarized his negligence claims arising out of that surgery as:

(1) failing to initially align the nail hole and the hole in the jig in order to permit the placement of the intramedullary hip screw[3] to permit distal interlocking,

---

2. In *Williams v. Nealon,* our sister court, in analyzing the appellee's 101.106(f) motion to dismiss, stated that "the proper standard of review for a motion to dismiss is abuse of discretion." 199 S.W.3d at 465. To the extent the court was holding that all motions to dismiss are reviewed for abuse of discretion, we disagree. The proper standard of review to be employed is dictated by the substance of the issue to be reviewed as opposed to the procedural vehicle through which that issue is developed. *See In re Doe,* 19 S.W.3d 249, 253 (Tex.2000) (stating that, in order to determine the proper standard of review, "we must determine whether the [issue] is a question of

law or fact"); *Valley Baptist Med. Ctr. v. Stradley,* 210 S.W.3d 770, 773 (Tex.App.-Corpus Christi 2006, pet. filed) (finding that, while motions to dismiss are generally reviewed for abuse of discretion, the issue of whether plaintiff's claim is a health care liability claim in accordance with the statute at issue is a question of law and is thus reviewed *de novo* ). Because the issue in this case— waiver of sovereign immunity—is legal in nature, we apply the *de novo* standard.

3. To the extent there is a distinction, Dearen apparently intended to allege that Dr. Sheth failed to align the nail hole and the jig to

(2) failing to correct the misalignment of the nail hole and the hole in the jig in order to permit the placement of the intramedullary hip screw to permit distal interlocking,

(3) failing to engage the distal interlock of the intramedullary hip screw in order to ensure proper leg alignment, and

(4) failing to properly follow the patient to provide early intervention that would have limited the scope and need for subsequent surgeries and would have limited his recovery time.

Such breaches of the standard of care were, among others, individually and collectively proximate causes of Plaintiff's injuries as claimed herein.

When Dearen's petition is viewed in conjunction with his expert's report, which provides the necessary background to understand the procedure, it becomes clear that Dearen is complaining that Dr. Sheth's failure to stabilize the short Gamma nail with the use of a distal interlocking screw caused his injuries.

■ The dispositive controversy in this jurisdictional challenge is the characterization of Dr. Sheth's failure to stabilize the Gamma nail with the distal interlocking screw. A suit can only be brought under Section 101.102(2) when there is a *use* of property. *See Texas A & M Univ. v. Bishop,* 156 S.W.3d 580, 583 (Tex.2005) (finding that, because the governmental officials did not use the property, sovereign immunity was not waived thereby allowing suit to be brought against the university); *San Antonio State Hosp. v. Cowan,* 128 S.W.3d 244,

246 (Tex.2004) (finding that the governmental entity did not use the property as required to invoke waiver of immunity); *Kerrville,* 923 S.W.2d at 584 (holding that "mere non-use of property" [cannot] support a claim under the Texas Tort Claims Act). Dr. Sheth frames Dearen's petition as alleging a misuse of property—the short Gamma nail was misused in that it was improperly secured thereby causing Dearen's injuries. Dearen characterizes his claims as a non-use of property—Dr. Sheth's failure to use the distal interlocking screw caused his injuries.

We find the characterization of Dearen's pleadings as alleging a misuse of the short Gamma nail to be a more accurate representation of the substance of Dearen's claims. *See Bossley,* 968 S.W.2d at 343 (looking at "the real substance of plaintiff's complaint" to determine whether a sufficient use was alleged as required by 101.021(2)); *Kerrville,* 923 S.W.2d at 585 ("The gravamen of their complaint is that KSH's non-use of an injectionable drug was the cause of their daughter's death."); *Phillips,* 187 S.W.3d at 676–77 (looking at "the real substance of [plaintiff's] petition" in determining, as part of its 101.106(f) analysis, whether plaintiff's claim could have been brought under the TCA).

The distal interlocking device is relevant only as a necessary[4] part of the larger device, the short Gamma nail. It is the proper use of the entire device (the short Gamma nail), which implicates the proper use of all the individual parts that aggregate to make the whole device effective,

---

permit the placement of the *distal interlocking* screw. As the expert's report states, the procedure itself was called an "intramedullary nailing" and involved the placement of a short Gamma nail which requires a distal interlocking screw to "lock" the nail in place. Dearen's amended petition further clarifies this by alleging the same facts, but substituting the

term "distal interlocking screw" for "intramedullary hip screw."

4. Both Dearen, in his amended petition, and Dearen's expert, in his report, stated that the nail *"requires* the distal interlocking screw for stability (emphasis added)."

that is crucial in stabilizing the hip thereby avoiding further injury. The use or mis-use of the screw is of no consequence in and of itself: it is merely a piece of a larger, multi-part device and is not de-signed to function alone.

 The line of cases in which courts have found a non-use, and therefore non-waiver of immunity, is distinguishable. For instance, in *Texas Natural Resource Conservation Commission v. White*, White argued that TNRCC's failure to continue use of a pump which was installed on his property to dissipate gasoline vapors caused a fire which destroyed that proper-ty.[5] 46 S.W.3d at 870. The supreme court held that such a claim involves a non-use of property outside the scope of the sover-eign immunity waiver statute. *Id.* Impor-tantly, the unused device (the pump) was alleged to be the *direct* cause of damages. *Id.* In this case, however, the device that Dearen claims was not used (the distal interlocking screw) is only *a piece* of a larger device (the Gamma nail) that is alleged to be the direct cause of his inju-ries. In *Kassen v. Hatley*, the supreme court held that "the non-use of available drugs during emergency medical treat-ment is not a use of tangible personal property that triggers waiver of sovereign immunity." 887 S.W.2d 4, 14 (Tex.1994). Similarly, in *Kerrville State Hospital v. Clark*, the supreme court found that the failure of the hospital to administer an injectionable drug to the plaintiff was a non-use of tangible personal property. 923 S.W.2d at 586. As a result, the court found that the plaintiff failed to plead facts sufficient to support a finding of waiver of sovereign immunity. *Id.* In reaching its conclusion, the court stated:

There cannot be waiver of sovereign im-munity in every case in which medical treatment is provided by a public facili-ty. Doctors in state medical facilities use some form of tangible personal property nearly every time they treat a patient. Because of this fact, a patient suing for negligence could always com-plain that a different form of treatment than the one employed would have been more effective and still claim waiver un-der the Act. If such a complaint were enough to constitute the use of tangible personal property under the Act, the doctrine of sovereign immunity would be rendered a nullity.

*Id.* at 585–86. Dearen does not complain that a different "form of treatment" should have been used. Instead, Dearen com-plains that the treatment he received, im-plantation of the Gamma nail device, was improperly performed. As such, we find these cases to be inapplicable to the facts at hand. *See also Bishop*, 156 S.W.3d at 583 (finding that the knife alleged to be the cause of plaintiff's injuries was not used as required under Section 101.021(2) because the governmental officials merely *allowed* the students to use it as opposed to putting it in use themselves); *Cowan*, 128 S.W.3d at 246 (holding that allowing the patient to keep his suspenders and walker, which he later used to kill himself, was not a use of property).

Dearen argues that his amended peti-tion, filed after Dr. Sheth filed his motion to dismiss, more clearly reflects his claim that Dr. Sheth's failure to use a distal interlocking screw, rather than the misuse of property, caused his injuries. Assuming without deciding that we can consider his amended petition,[6] we do not find it to be

---

**5.** White also argued that the pump's use on his property caused the damages, however, this claim was not considered by the court

because it involved factual allegations first raised on appeal. *White*, 46 S.W.3d at 870.

**6.** Dr. Sheth argues that once he filed his motion to dismiss pursuant to 101.016(f), his

additionally persuasive. Dearen's amended petition offers essentially the same facts and claims as his original petition; however, in the amended petition, he explicitly uses phrases such as "non-use" and "did not use." Despite these pointed characterizations, the gravamen of his petitions remains unchanged in pleading that Dr. Sheth's misuse of the nail device (in failing to secure it with the screw) led to his injuries. *See Kerrville*, 923 S.W.2d at 585 ("The gravamen of their complaint is that KSH's non-use of an injectionable drug was the cause of their daughter's death."); *Phillips*, 187 S.W.3d at 676–77 (looking at "the real substance of [plaintiff's] petition" in determining, as part of its 101.106(f) analysis, whether plaintiff's claim could have been brought under the TCA).

Dearen also seems to contend that because some of his claims involved general negligence, his suit could not have been brought against UTHSCH under the TCA because such claims are outside the scope of the sovereign immunity waiver provisions. A suit can be brought under the TCA, however, when there are both claims within and outside the scope of the TCA's sovereign immunity waiver provisions. *See, e.g., Salcedo v. El Paso Hosp. District*, 659 S.W.2d 30, 33 (Tex.1983) (finding that plaintiff's allegations stated a claim within the scope of the TCA where plaintiff alleged non-use of property and misuse of property); *Tejada*, 207 S.W.3d at 922–23 (finding that plaintiff's claims could have been brought under the TCA where plaintiff pleaded claims of general negligence and negligence resulting from the use of tangible property). Because we find that Dearen's pleadings allege a misuse of tangible property causing his injuries, claims that are within the scope of the TCA waiver provisions, the fact that he also alleged general negligence is irrelevant. We sustain Dr. Sheth's sole issue.

### III. Conclusion

Because we find that Dearen's suit could have been brought against UTHSCH, we reverse the order of the trial court denying Dr. Sheth's motion to dismiss. This cause is remanded to the trial court with instructions to enter an order of dismissal of Dearen's claims against Dr. Sheth, with prejudice, and for such further proceedings and orders as the parties may show themselves justly entitled to receive in accordance with this opinion.

right to dismissal was perfected and any subsequent pleadings by Dearen could not effect that right. *See Villasan v. O'Rourke*, 166 S.W.3d 752, 758 (Tex.App.-Beaumont 2005, pet. filed) (finding that the defendant's right to dismissal under 101.106(e) was perfected upon the filing of his motion to dismiss and any subsequent pleadings "do not moot the right created by the filing of the motion under section 101.106"). Because we find that the amended petition provides no additional value, we need not address this argument.