Reversed and Remanded and Opinion filed May 1, 2008








Reversed and
Remanded and Opinion filed May
1, 2008.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00437-CV

____________

 

HARRIS COUNTY HOSPITAL DISTRICT, Appellant

 

V.

 

TEXTAC PARTNERS I, A TEXAS GENERAL
PARTNERSHIP,
HOUSTON ISD, HOUSTON COMMUNITY COLLEGE, CITY OF HOUSTON, AND HARRIS COUNTY,
Appellees

 



 

On Appeal from the County
Civil Court at Law No. 2

Harris County, Texas

Trial Court Cause No. 816,923

 



 

O P I N I O N








In this appeal, the Harris County Hospital District (AHospital District@) appeals the
trial court=s dismissal of its condemnation action, in which it
sought to acquire property owned by Textac Partners I (ATextac@) as part of an
LBJ Hospital expansion project.  In its first three issues, the Hospital
District contends that the trial court erred in granting Textac=s motion to
dismiss and in rendering judgment on a jury=s verdict in favor
of Textac for damages and attorney=s fees.  In its
fourth issue, the Hospital District contends that Textac consented to the
taking of its property because it acquiesced in the payment of its taxes
through the taxing authorities= withdrawal of a portion of the special
commissioners= award from the registry of the court.  

In addition, Textac argues that the hearing before the
trial court was actually a trial and the trial judge resolved the fact issues
created by the various affidavits and relevant statutes and rules in Textac=s favor.  Textac
claims we should review the order as we do any bench trial, and uphold it if
any evidence supports the court=s findings.  The Hospital District
responds that we should look to the substance of the motion to dismiss to help
us assess the nature of the hearing below and therefore our review of it. 
According to the Hospital District, the motion to dismiss was actually a plea
to the jurisdiction that we should review de novo.  

First, we hold that Textac did not consent to the
condemnation action by acquiescing in the taxing authorities= withdrawal of
property taxes from the court registry.  Next, we conclude that the motion to
dismiss filed by Textac was actually a motion for summary judgment to be
reviewed under Rule 166a(c) of the Texas Rules of Civil Procedure.  Finally, we
hold that the trial court erred in granting Textac=s motion to
dismiss because fact issues exist.  Because the motion to dismiss was granted
erroneously, we reverse the order of dismissal and the subsequent judgment
following the jury trial, and remand to the trial court.

A.      Factual and
Procedural Background

1.       The
Hospital District Condemns the Land; Special Commissioners are Appointed and
Award Amounts to Textac.








In 2004, the Hospital District petitioned the county court
to condemn twenty-six  tracts of land adjacent to LBJ Hospital near downtown
Houston.  The stated purpose for condemning this land was that the Hospital
District=s Board of
Managers found that a public necessity and convenience existed for acquiring
the land as part of the LBJ Hospital Expansion Project.[1] 
The land was owned by Textac, which had acquired the tracts over a period of
years.  Special commissioners were appointed to determine the appropriate
compensation for Textac=s land; the Hospital District deposited
the amount of compensation awarded to Textac into the registry of the court. 
Various taxing authorities[2]
later moved to withdraw from the registry the amount of delinquent ad valorem
taxes they claimed Textac owed on its land; Textac did not object to this
withdrawal.

2.       Textac and
the Hospital District File Competing Motions in the Trial Court. 

Almost immediately after the condemnation and award, Textac
began to object to the condemnation on two primary bases.  First, it claimed
that no public necessity existed for the taking.  Second, and more importantly,
it claimed that the Harris County Commissioners Court exerted improper
influence over the Hospital District, which, by statute, it alleged to be a
political body intended to act completely independent of the Commissioner=s Court. Virtually
all of the pleadings on both sides addressed these two issues.

Textac filed objections and exceptions to the special
commissioners= awards and, central to this appeal, a motion to
dismiss the condemnation action.  In the motion to dismiss, Textac claimed,
among other things, that there was no public necessity for the taking of its
property, and that the decision to condemn its property Awas accompanied by
fraud, motivated by graft and corruption[,] and results from the widespread and
systematic gross abuse of discretion on the part of popularly elected Harris
County public officials.@ 








Thereafter, the Hospital District moved for a partial
summary judgment, asserting that as a matter of law a public necessity existed
for the condemnation action, that good faith negotiations had occurred, and
that it had complied with the statutory prerequisites for condemnation.  The
Hospital District also claimed that Textac waived the right to contest the
Hospital District=s exercise of eminent domain because it
permitted the taxing authorities to withdraw amounts owed from the court registry
without objection, and it benefitted from the withdrawal. 

3.       Textac
Responds to the Motion for Summary Judgment and Supplements its Motion to
Dismiss with Additional Details on Bribe Allegations.

In response to the Hospital District=s motion for summary
judgment and in further support of Textac=s motion to
dismiss, Textac provided more detailed allegations against the Hospital
District and also the Harris County Commissioner=s Court, which was
not a party.  These allegations are meant to support its claims that the
Hospital District engaged in condemnation fraud and arbitrary and capricious
conduct that precludes condemnation. 

Specifically, Textac claimed that the Commissioners Court
sought to condemn Textac=s property in retaliation against Mr. Les
Allison, a partner of Textac, because he refused to pay a bribe solicited on
behalf of County Commissioner El Franco Lee.[3] 
Textac also claimed that the Hospital District=s then-CEO, John
Guest, concealed relevant information from the Board of Managers of the
Hospital District concerning Allison=s proposals. 
Finally, Textac asserted that the Commissioners Court initiated a series of
events calculated to obtain control over Textac=s property,
including requiring the Hospital District to follow the County=s guidelines for
acquiring property and to use the Harris County Right-of-Way Department. 
Consequently, Textac argued, the Hospital District=s Board of
Managers ceded to the commissioners court=s Amandate@ to condemn Textac=s property,
instead of making an independent, informed decision concerning the
condemnation.[4]









4.       The
Hospital District Files a Supplemental Motion for Partial Summary Judgment
Showing Its Statutory Connection with the Commissioners Court.

The Hospital District then filed a supplemental motion for
partial summary judgment, in which it presented argument and attached evidence
it contended controverted Textac=s allegations. 
The Hospital District also asserted that it was Anot an autonomous
entity capable of operating completely free and clear@ of the
Commissioners Court; rather, the A[t]he legislative
scheme set out in the Health & Safety Code contemplates that there will be
a great deal of oversight by the Commissioners Court.@  In further
support of this assertion, the Hospital District cited Texas Health and Safety
Code section 281.049, which provides that A[t]he
commissioners court may prescribe: (1) the method of making purchases and
expenditures by and for the [hospital] district; and (2) accounting and control
procedures for the district.@  See Tex. Health & Safety Code ' 281.049(a).

5.       Textac
Files a Combined Response to the Supplemental Summary Judgment Motion and Bench
Memorandum in Support of Its Motion to Dismiss.

In response, Textac filed a combined AResponse to
Plaintiff=s Supplemental Motion for Partial Summary Judgment and
Bench Memorandum in Support of Motion to Dismiss,@ contesting the
Hospital District=s characterization of the relationship
between the Commissioners Court and the Hospital District.  Among other things,
Textac argued that the Hospital District is an independent governmental entity,
and that section 281.054 of the Texas Health and Safety Code explicitly gives
itCnot the
Commissioners CourtCthe power of eminent domain to acquire
property located in the district if the property interest is necessary or
convenient for the exercise of the rights or authority conferred on the
hospital district.  See Tex.
Health & Safety Code ' 281.054. 
Further, under section 281.050 of the Health and Safety Code, the authority of
the Commissioners Court is expressly limited to the power of Aapproval@ of the Hospital
District=s independent
decision to purchase or condemn real property.  








Section 281.050, entitled APowers Relating to
District Property, Facilities, and Equipment,@ provides as
follows:  

With the approval of the
commissioners court, the board may construct, condemn, acquire, lease, add to,
maintain, operate, develop, regulate, sell, exchange, and convey any property,
property right, equipment, hospital facility, or system to maintain a hospital,
building, or other facility or to provide a service required by the district. 
Approval of the commissioners court shall be required for the sale or lease of
a hospital facility regardless of the provisions of  Section 285.051. 

Tex. Health & Safety Code ' 281.050 (emphasis
added).  Therefore, Textac argued, in the absence of specific legislative
authority, the Commissioners Court could not Asubstitute its
will in order to determine the public necessity of the taking.@  It also argued
that the condemnation of property did not fall under the procurement statute
cited by the Hospital District, because that statute applied only to the
procurement of goods and services by purchase, not the acquisition of real
property by condemnation.

6.       The
Hearing on the Motions and the Trial on Damages.

Over a period of two days, the trial court held a hearing
on the motions.[5] 
The court heard extensive arguments by the parties, took judicial notice of the
motions, responses, and evidence previously submitted, and admitted additional
exhibits in evidence.  At the conclusion of the hearing, the court announced
that it was going to dismiss the Hospital District=s action, but it
would delay signing the order for two weeks to allow the parties time to attempt
to resolve the dispute.  Apparently, no resolution was reached, and on April
18, 2006, the trial court signed the order of dismissal.  The order recited
that the Hospital District did not have the right to condemn the property, and
directed the Hospital District to surrender possession of the property to
Textac.








Thereafter, the trial court conducted a jury trial on
Textac=s damages for the
Hospital District=s temporary possession of the property and
on its attorney=s fees.[6] 
The trial court rendered a judgment on the jury=s verdict in favor
of Textac for $1,975,800.00 as damages, $889,670.00 in attorney=s fees, $40,000.00
in attorney=s fees in the event the Hospital District appealed the
judgment to the Texas Court of Appeals, $40,000.00 in attorney=s fees in the
event the Hospital District appealed to the Texas Supreme Court, and
$180,000.00 for expenses.  This appeal followed.

B.      Did Textac
Waive Its Right to Challenge the Condemnation by Allowing Taxing Authorities to
Use Funds from the Court=s Registry to Pay
Taxes Owed on the Condemned Property?

In its
fourth issue, the Hospital District contends that Textac has waived the right
to contend the taking of its property was unlawful because it did not object
when the taxing authorities asked that a portion of the special commissioners= award be withdrawn from the registry
of the court to pay taxes owed on the condemned property.  The parties
apparently agree that the special commissioners made an award, the Hospital
District deposited the amount of the award into the court registry, and the
taxing authorities subsequently moved to withdraw a portion of the award to pay
taxes owed on the property from the court registry.  The parties do not discuss
the amount of money withdrawn, except that Textac distinguishes the withdrawal
here of Aa small portion@ of the award from
cases in which the entire award was withdrawn.  If the Hospital District is correct, this issue would
dispose of the appeal; therefore, we address it first.

1.       The
Hospital District=s Arguments in Favor of Waiver.








The
Hospital District primarily relies on the rule announced by the Texas Supreme
Court in State v. Jackson, in which the Court held that, by accepting
the award of the special commissioners, the landowner was precluded from
contesting the State=s right to take his property:  

After an award has been made, and the money deposited
in the registry of the Court and the landowner has withdrawn the same, he
cannot thereafter contend that the taking was unlawful.  In legal
contemplation, he has consented to such taking and will not be permitted to
retain his compensation and at the same time assert that the condemning
authority had no right to take his property under the eminent domain power.  

See State v. Jackson, 388 S.W.2d
924, 25 (Tex. 1965).  

The
Hospital District argues that Textac is not entitled to contest the property=s condemnation because it did not
object to the withdrawal, and because it benefitted when the money was used to
pay taxes owed on the property.  In support of this argument, the Hospital
District cites Sunbelt Props. v. State, No. 08-02-00322-CV, 2003 WL
756718 (Tex. App.CEl Paso Mar. 6, 2003, no pet.) (mem. op.), in which the court
held that when the property owner and the mortgagees withdrew the award from
the court registry, even though the owner only received a portion of the award
directly, the owner received the benefit of the entire award because it
discharged the owners=s mortgage debt and extinguished the interest of the
mortgagees in the property.  Id. at *4.  








The
Hospital District further asserts that, under the provisions of Texas Tax Code
section 32.01(a), a tax lien attaches to property on January 1 of each year to
secure payment of all taxes imposed for the year on the property.  See Tex. Tax Code ' 32.01(a).  Therefore, the taxing
authorities are lienholders with a security interest in the property and the
proceeds thereof.  See Nalle v. Eaves, 5 S.W.2d 500, 501 (Tex.
Comm=n App. 1928) (AIt has been repeatedly held that the
word >owners,= when used in special assessment,
eminent domain, or condemnation statutes, embraces the holders of every kind of
lien, claim, or equity in the property involved.@).  According to the Hospital
District, when Textac allowed its lienholders to withdraw a portion of the award
money in the registry of the court, rather than paying the tax bill before the
taxing authorities took that action, Textac received a benefit from the award
even though the amount withdrawn was less than the full award. 

2.       The Case
Law and Circumstances of this Case Do Not Support the Hospital District=s Position.

The Hospital District does not direct us to any case in
which a landowner forfeited the right to challenge a condemnation action
because a taxing authority withdrew from the court registry the amount of taxes
owed on the property sought to be condemned, and we have found none.  However,
in Tigner v. City of Angleton, 949 S.W.2d 887, 891 (Tex. App.CHouston [14th
Dist.] 1997, no pet.), this Court held that the rule of State v. Jackson
precluded the owner of a 50% interest in property from contesting the
condemnation action when the owners of the other 50% interest had withdrawn
their portion of the award from the court registry, but she had not.  In a
footnote, we limited the holding of Tigner to the facts of that case,
stating, AThis opinion should not be read to apply to a
situation in which a landowner has not requested that any funds be withdrawn or
objects to any funds being withdrawn.  That issue is not before us and we
expressly do not address it.@  Id. at n.2.  

Having considered the issue on the record before us today,
we conclude that the rule of State v. Jackson does not apply here.  In
this case, the money that was withdrawn was not used for a purpose inconsistent
with Textac=s contest of the condemnation; the money was used to
pay taxes owing on the property.  And, it is significant that Textac did not
file the motion to have the funds withdrawn, the taxing authorities did. 
Therefore, we do not view this withdrawal as analogous to the situation in Tigner. 









We are also reluctant to find waiver in this case because
the record is not well developed concerning the relevant facts.  The taxing
authorities= motion appears in the record only as an exhibit to
the Hospital District=s partial motion for summary judgment, and
any orders granting the motion are not included in the record.  Further, the
parties do not identify the amount of the award the Hospital District deposited
into the registry of the court or the amount withdrawn by the taxing authorities,
nor have they directed us to any place in the record where these amounts may be
found.  We are therefore unable to determine whether the amounts involved may
contribute to our analysis in any meaningful way.  

We overrule the Hospital District=s fourth issue.

C.      Did the
Trial Court Err or Abuse Its Discretion in Granting Textac=s Motion to Dismiss
the Hospital District=s Condemnation
Action?

In three issues, the Hospital District contends that the
trial court erred in (1) granting Textac=s motion to
dismiss the condemnation action, (2) concluding that the Hospital District does
not have the right to condemn the property, and (3) rendering judgment in favor
of Textac for damages and attorney=s fees based on
the erroneous dismissal.

1.       Standard
of Review.

Before addressing the substance of the Hospital District=s issues, we must
first determine the appropriate standard of review.  Both parties agree that
Texas Health and Safety Code section 281.050 governs the resolution of this
case.  See Tex. Health &
Safety Code ' 281.050 (providing that hospital district
board may condemn property with the approval of the commissioners court).  Both
parties also agree that statutory construction is a question of law that we
review de novo.  See In re Forlenza, 140 S.W.3d 373, 376 (Tex. 2004). 
Beyond this, however, the parties disagree as to the standard of review we
should apply, primarily because they disagree on how to characterize the
proceedings below.

a.       Textac
Claims the Hearing Below was a Trial on the Merits; the Hospital District
Claims it was a Plea to the Jurisdiction.








The Hospital District contends that the style of the
request for reliefCin this case a Amotion to dismiss@Cdoes not dictate
the standard of review we should apply; instead, we should look to the
substance of the motion to determine the proper standard of review.  See
Sheth v. Dearen, 225 S.W.3d 828, 831 n.2 (Tex. App.CHouston [14th
Dist.] 2007, no pet.) (applying de novo rather than abuse of discretion
standard of review to motion to dismiss because A[t]he proper
standard of review to be employed is dictated by the substance of the issue to
be reviewed as opposed to the procedural vehicle through which that issue is
developed.@).  According to the Hospital District, the proceeding
below was the functional equivalent of a plea to the jurisdiction, and
therefore this court=s review of the trial court=s ruling should be
de novo.  See State v. Holland, 221 S.W.3d 639, 642 (Tex. 2007). 


Textac responds that its motion to dismiss did not raise a
jurisdictional challenge, but instead sought to dismiss the case on the merits
for failure to prove the right to condemn.  Textac characterizes the proceeding below as follows:  AAfter hearing the evidence, the court
simply dismissed the case on its merits, finding by a preponderance of the
evidence that [the Hospital District=s] proof was insufficient to
demonstrate compliance with Tex. Health & Safety Code ' 281.050.@  Textac asserts
that, because the Hospital District did not request findings of fact and
conclusions of law, the trial court=s judgment
necessarily implies all findings of fact necessary to support it contained in
the record.  See Sixth RMA Partners, L.P. v. Sibley, 111 S.W.3d 46, 52
(Tex. 2003).  Accordingly, Textac maintains that the implied findings of fact
which underpin the ultimate legal conclusion should be reviewed for legal and
factual sufficiency.  See Brocail v. Anderson, 132 S.W.3d 552,
556 (Tex. App.CHouston [14th Dist.] 2004, pet. denied) (although
resolution of special appearance is a legal issue, when the appellate record
includes the reporter=s and clerk=s records, implied
findings of fact supporting resolution may be challenged for legal and factual
sufficiency).  In particular, Textac asserts that the Aoutcome-determinative@ fact-finding the
court impliedly found is Athat Commissioners Court >exerted influence,= >mandated,= or compelled the
condemnation of the subject property in a manner inconsistent with a clear
reading of ' 281.050.@ 

b.       The Motion
to Dismiss Appears to be a Motion for Summary Judgment.








We disagree with the parties= respective
positions.  We do agree with the Hospital District, however, that we must look
to the substance of the issue rather than the procedural vehicle employed to
determine the appropriate standard of review.  See Sheth, 225
S.W.3d at 831 n.2.  After carefully reviewing the motions and responses filed
below, we conclude that Textac=s motion to dismiss is the functional
equivalent of a motion for summary judgment directed to the merits of the
Hospital District=s authority to condemn its property
pursuant to section 281.050.  We base this conclusion on:

$                  
the nature and
substance of the issues raised in Textac=s motion to dismiss, which Textac candidly acknowledges was
directed to the merits of its claims;

$                  
Textac=s concurrent development of the
same issues in both its motion to dismiss and in response to the Hospital
District=s motions for partial summary
judgment; and

$                  
the
treatment of the same or similar issues raised in other condemnation cases.

(1)     Textac=s Motion to Dismiss
Does Not Address Jurisdictional or Procedural Issues, But Instead Addresses the
Merits of its Claims.

First, the issues discussed in the motion are not the type
of issues typically contained in a motion to dismiss.  Generally, a Amotion to dismiss@ does not address
claims on the merits.  It is directed to procedural or avoidance issues.  See
VanZandt v. Holmes, 689 S.W.2d 259, 261 (Tex. App.CWaco 1985, no
writ) (noting that involuntary dismissal of a plaintiff=s action is generally
limited to situations such as those involving a plea in abatement, special
exceptions not cured by amendment, mootness, lack of prosecution, or lack of
jurisdiction); Lane v. Baxter Healthcare Corp., 905 S.W.2d 39, 41 (Tex.
App.CHouston [1st
Dist.] 1995, no writ) (A[A] dismissal is not a proper method to
adjudicate the merits of a case.@); see also
Deep Water Slender Wells, Ltd. v. Shell Intern. Exploration & Prod., Inc.,
234 S.W.3d 679, 695 (Tex. App.CHouston [14th Dist.] 2007, pet. filed)
(recognizing that dismissal of all claims to enforce a forum selection clause
is Aa nonmerits basis
for dismissal@).[7] 









Unlike typical motions to dismiss, this one did address the
claims on the merits. Textac=s motion was based on the merits of its
claims that the Hospital District engaged in fraud, acted in an arbitrary and
capricious manner, or abused its discretion when it sought to condemn Textac=s property.[8] 
Textac itself admits on appeal that its motion to dismiss went Asquarely to the
merits of the case.@  Even the trial court=s order of
dismissal reflects that the trial court resolved the issue on the merits by
deciding that the Hospital District Adoes not have the
right to condemn the subject property@ and ordering
possession of the property returned to Textac.  

Consequently, because Textac=s motion went to
the merits of its caseCnot to procedural issuesCit appears to be
more the functional equivalent of a motion for summary judgment than a motion
to dismiss.[9]

(2)     In Textac=s Combined Motion
to Dismiss and Response to Motion for Summary Judgment, the Reasons Given to
Grant the Motion to Dismiss are the Same as the Reasons to Deny the Summary
Judgment Motion.








Textac=s filings below and the hearing itself
lend additional support to treating its motion to dismiss substantively as a
motion for summary judgment.  The motion is completely intertwined with Textac=s responses to the
Hospital District=s motion for partial summary judgment and
supplemental motion for partial summary judgment.  Textac=s initial motion
to dismiss was cursory and not supported by evidence.  Instead, Textac detailed
its allegations and offered supporting evidence for its motion to dismiss in
its response to the Hospital District=s motion for
partial summary judgment.  In that filing, Textac asserted the following:

$                  
ATextac will establish both
herein and further in support of its Motion to Dismiss that the finding of
public necessity in this case was precipitated by fraud, bad faith, and abuse
of public office@; and

$                  
AIf the terms >fraud= and >arbitrary and
capricious= are to have any meaning then they would surely apply
to the illegal and unconscionable actions evidenced both herein and [in]
support of Textac=s Motion to Dismiss, as well as the
evidence produced at the court=s hearing of these matters.@

(emphasis
added).  

Likewise, in response to the Hospital District=s supplemental
motion for summary judgment, Textac filed its AResponse to
Plaintiff=s Supplemental Motion for Partial Summary Judgment and
Bench Memorandum in Support of Motion to Dismiss,@ consolidating its
arguments and supporting evidence into a single document.

In addition, both the motion to dismiss and the summary
judgment motions were presented to the judge at the same time, no live
witnesses were presented to the judge, and the lawyers presented legal
arguments about the effect of the evidence before the judge, just as they would
in a complex summary judgment hearing.  And the judge ruled at the end of the
hearing, apparently based on the arguments made to him and the evidence
discussed during arguments, just as might happen in a summary judgment case.

(3)     The Case
Law Does Not Support Textac=s Position.








The third reason we have decided to view the motion to
dismiss as a summary judgment is the state of the case law.  Neither party has
identified a case in which a court discusses the appropriate standard of review
to apply to the dismissal of a condemnation action when a property owner raises
claims similar to Textac=s.[10] 
However, often such claims are the subject of motions for summary judgment or,
when fact issues exist, jury trials.  See, e.g., Zboyan v. Far Hills
Util. Dist., 221 S.W.3d 924, 928B931 (Tex. App.CBeaumont 2007, no
pet.) (affirming trial court=s grant of partial summary judgment in
favor of condemnor and denying landowner=s motion for
partial summary judgment alleging that condemnor abused its discretion,
exhibited bad faith, and failed to adequately investigate alternative
property); Newsom, 171 S.W.3d at 273 (affirming denial of landowner=s motions for summary
judgment when landowner failed to conclusively prove that the condemnor acted
arbitrarily and capriciously); Ludewig v. Houston Pipeline Co., 773
S.W.2d 610, 614B15 (Tex. App.CCorpus Christi
1989, writ denied) (affirming trial court=s disregard of
jury=s finding that
condemnor acted arbitrarily and capriciously); Houston Lighting & Power
Co. v. Klein Indep. Sch. Dist., 739 S.W.2d 508, 514B15 (Tex. App.CHouston [14th
Dist.] 1987, writ denied) (holding trial court did not abuse its discretion in
submitting jury question whether utility company abused its discretion in
condemning property for easement); City of Houston v. Hamons, 496 S.W.2d
662, 663, 665 (Tex. Civ. App.CHouston [14th Dist.] 1973, writ ref=d n.r.e.)
(affirming jury finding that condemnor acted arbitrarily or capriciously); Boucher
v. Tex. Tpk. Auth., 317 S.W.2d 594, 598B99 (Tex. Civ. App.CTexarkana 1958, no
writ) (affirming grant of partial summary judgment in favor of condemnor
against landowner alleging fraud and bad faith).

In fact, in support of its contention that fact findings
are often necessary for a trial court to enter judgment on the issue of a
condemnor=s right to condemn, Textac relies on Malcomson Road
Utility District v. Newsom, 171 S.W.3d at 273.  However, Newsom
actually supports our conclusion.  Newsom involved competing motions for
summary judgment between a utility district and the landowner.  Much the same
as here, the trial court denied the utility district=s motions for
partial summary judgment, granted Newsom=s motions for
summary judgment, and denied the utility district the right to condemn.  Id.
at 260B61.  On review,
the court of appeals held that, among other things, a fact issue existed as to
whether the utility district=s actions were arbitrary and capricious,
and it remanded the case for a determination of the issue.  Id. at 273,
280.  Thus, the only formal difference between Newsom and this case is
that Newsom=s challenge to the utility district=s condemnation
action was presented in the procedural vehicle of summary judgment motions,
while Textac chose the procedural vehicle of a motion to dismiss.  Were we to
analyze this case differently than the Newsom court did based on this
tenuous distinction, we would be acting contrary to our directive to determine
the standard of review based on the substantive issues presented rather than
the procedural vehicle used.  See Sheth, 225 S.W.3d at 831 n.2. 








For these reasons, we conclude that the appropriate
standard of review to apply to this case is the standard applied to a trial
court=s grant of a
summary judgment.  The propriety of summary judgment is a question of law;
therefore, we review the trial court=s decision de
novo.  Natividad v. Alexsis, Inc., 875 S.W.2d 695, 699 (Tex. 1994). 
Summary judgment is appropriate when there is no genuine issue as to any
material fact and judgment should be granted in favor of the movant as a matter
of law.  Diversicare Gen. Partner, Inc. v. Rubio, 185 S.W.3d 842, 846
(Tex. 2005).  We consider all the evidence in the light most favorable to the
nonmovant, indulging every reasonable inference in favor of the nonmovant and
resolving any doubts against the motion.  Sudan v. Sudan, 199 S.W.3d
291, 292 (Tex. 2006).  We review a summary judgment for evidence that would
enable reasonable and fair-minded jurors to differ in their conclusions.  Wal-Mart
Stores, Inc. v. Spates, 186 S.W.3d 566, 568 (Tex. 2006) (per curiam)
(citing City of Keller v. Wilson, 168 S.W.3d 802, 822B23 (Tex. 2005)).[11]

Having determined the appropriate standard of review, we
turn to the substance of the Hospital District=s issues.

2.       Analysis
of the Hospital District=s Issues.

a.       The Law
Relevant to Condemnation for Public Use.








Private property may only be taken for a public use.  Borden
v. Trespalacios Rice & Irrigation Co., 98 Tex. 494, 86 S.W. 11, 15
(1905); see Tex. Const.
art. I, ' 17.  The question
of whether a given set of facts constitutes a public or private use is one of
law for the court.  Hous. Auth. of City of Dallas v. Higginbotham, 135
Tex. 158, 143 S.W.2d 79, 83 (1940); Tenngasco Gas Gathering Co. v. Fischer,
653 S.W.2d 469, 474 (Tex. App.CCorpus Christi 1983, writ ref=d n.r.e.). 
However, a condemning authority=s discretion to condemn land for a public
purpose is nearly absolute in the absence of proof that the condemnor acted
fraudulently, in bad faith, or arbitrarily and capriciously.  See Newsom,
171 S.W.3d at 268B69; Ludewig, 773 S.W.2d at 614; Bradford
v. Magnolia Pipe Line Co., 262 S.W.2d 242, 246 (Tex. Civ. App.CEastland 1953, no
writ); Jones v. City of Mineola, 203 S.W.2d 1020, 1022 (Tex. Civ. App.CTexarkana 1947,
writ ref=d).  Or, as the
Texas Supreme Court stated in Higginbotham, the legislative declaration
that a use is public creates a presumption in its favor, and will be binding
upon the courts unless such use is Aclearly and
palpably of a private character.@  Higginbotham,
143 S.W.2d at 83.

The term Afraud@ as applied to a
condemnor=s decision to institute condemnation proceedings means
Aany act, omission
or concealment, which involved a breach of legal duty, trust or confidence,
justly reposed and . . . injurious to another, or by which an undue and
unconscientious advantage is taken of another.@  Wagoner v.
City of Arlington, 345 S.W.2d 759, 763 (Tex. Civ. App.CFort Worth 1961,
writ ref=d n.r.e.).  The
term Aarbitrary and
capricious@ as applied to the condemnor=s action means Awillful and
unreasoning action, action without consideration and in disregard of the facts
and circumstances [that] existed at the time condemnation was decided upon, or
within the foreseeable future.@  Id.; see also Houston Lighting &
Power, 739 S.W.2d at 515 (holding trial court did not abuse its discretion
in submitting jury instruction defining Aarbitrary and
capricious@ consistently with Wagoner and other
authorities).  If the purpose for which condemnation was sought could in
reasonable minds in good faith be deemed to be a public one, then the
condemnation proceedings are justifiable and lawfully authorized.  Wagoner,
345 S.W.2d at 763. 

b.       Textac=s Allegations
Regarding Fraud and Arbitrariness and Capriciousness.








Textac contends that the trial court dismissed the Hospital
District=s action because
it found that the Hospital District failed to prove it had complied with Health
and Safety Code section 281.050.  The ultimate issue of a condemnor=s authority to
condemn is a legal question.  However, Textac, as the movant, had the burden to
plead and prove that the Hospital District=s action was
founded in fraud or was arbitrary and capricious.  See Newsom, 171
S.W.3d at 269; Wagoner, 345 S.W.2d at 762B63; Jones,
203 S.W.2d at 1022.

As outlined above, Textac=s claims included
these allegations:

$                  
the
condemnation action was in retaliation for Mr. Allison=s refusal to pay a bribe sought on
behalf of County Commissioner El Franco Lee;

$                  
the Hospital
District=s then-CEO concealed relevant
information from the Board of Managers that was essential to an informed
evaluation of the need for the property;

$                  
the
Commissioners Court mandated that the Hospital District use its guidelines for purchasing
property and the Harris County Right-of-Way Department in an effort to control
the condemnation process and the flow of information to the Board;

$                  
the
Commissioners Court was willfully indifferent to the Hospital District=s statutory independence; and

$                  
the
Hospital District abdicated its responsibilities to make an independent
determination of the public necessity for taking Textac=s property.  

Textac=s supporting
evidence included affidavits, deposition testimony, documentary exhibits, and
audiotaped telephone conversations and their transcripts.

c.       The
Hospital District=s Evidence Demonstrating a Public Necessity
for Condemnation.








The Hospital District responded with arguments and evidence
it contends refuted Textac=s allegations.  To demonstrate that a
public necessity existed for the condemnation, the Hospital District submitted
its board=s April 29, 2004, resolution decreeing that a public
necessity and convenience existed for the LBJ Hospital Expansion Project, and
authorizing the purchase or condemnation of tracts within the project area. 
The Hospital District supported this evidence with, among other things, the
affidavit of David Lopez, the Hospital District=s CEO, explaining
that the acquisition of property to the west of LBJ Hospital, including Textac=s property, was
necessary to carry out the expansion of the LBJ Hospital in keeping with the
goals set out in the District=s A2015 Plan.@ The 2015 Plan was
adopted to meet the future public health care needs of the people of Harris
County, and was before the court.  

d.       The
Evidence Relating to the Alleged Bribe Attempt.

One of the ways in which Textac attacked the validity of
the condemnation of its property was to show that it actually was done in
retaliation for Allison=s refusal to pay a bribe.  In support of
this, Textac offered the affidavit of Les Allison, a partner of Textac.  In the
affidavit, Allison averred that in early 1998, he met with a ABill Lee,@ who claimed he
was a representative of Commissioner L. Franco Lee and was contacting Allison
at Commissioner Lee=s request regarding his interest in
developing Textac=s property.  Further, Allison stated that
this individual claimed he was a Areal estate
advisor@ to Commissioner
Lee and he offered to provide Aunspecified services@ for Textac in
return for $50,000, which Allison concluded was an improper effort to solicit
money from him.  Textac also submitted the affidavit of Jack Abercia, Harris
County constable for Precinct One, which it contended corroborated Allison=s allegation.  

The Hospital District disputed this claim.  It submitted
the deposition testimony of Constable Abercia, which contradicted several of
the statements made in his affidavit.  The Hospital District also submitted the
affidavit of Commissioner Lee, in which he (1) denied ever associating with a
person named Bill Lee in any capacity, or even knowing such a person, and (2)
denied that he authorized anyone to contact Allison on his behalf or to solicit
any payments from Allison.  Commissioner Lee also averred that the only contact
he made with any of the Board of Managers concerning the condemnation was in
July 2004, after a meeting with Allison, when he spoke to a Board member to
request that the Board consider stopping the condemnation long enough to review
Allison=s proposals. 
Deposition testimony of Allison also was relied upon to demonstrate that
Allison had no other evidence connecting ABill Lee@ to Commissioner
Lee.  In addition, the Hospital District argued there was no evidence that,
five years after the alleged incident, Commissioner Lee used his influence to
induce the Commissioners Court or the Hospital District to take Textac=s property.  








e.       Textac=s Evidence that the
Hospital District=s Decision to Condemn was Arbitrary and
Capricious or an Abuse of Discretion.








Textac also contended that the Hospital District=s Board of
Managers= determination of
public necessity was arbitrary and capricious or an abuse of discretion on two
grounds.  First, Textac argued that the Commissioners Court was willfully indifferent
to the Board of Managers= statutory independence.  Second, it
argued that the Board of Managers abdicated its responsibilities to
independently determine the public necessity for taking Textac=s property.  To
support these arguments, Textac pointed to a Commissioners Court order
directing the Hospital District to stay within the County=s guidelines and
policies regarding the acquisition of real estate, including using the Harris
County Right of Way Division for purchasing property, which Textac contended
enabled it to control the condemnation process and the flow of information to
the Board of Managers.[12] 
Textac also pointed to evidence it contended demonstrated a conflict of
interest arising from the professional duties the County Attorney=s Office owed to
the Commissioners Court and the duties it owed to the Hospital District in
connection with these actions.  Textac further pointed out that, in response to
a recommendation by the general manager of the Right of Way Division, the
Commissioners Court approved a resolution decreeing that itCnot the Hospital
DistrictCfound that a
public necessity and convenience existed for the LBJ Hospital Expansion Project
and authorized the purchase or acquisition by eminent domain of the tracts
within the project area on February 3, 2004, well before the Hospital District
approved its resolution on April 29, 2004.  Textac=s evidence also
included a transcript of an audiotaped telephone conversation between Les
Allison and the Hospital District=s Board of
Managers Chairperson, in which she commented that Textac=s property was
being condemned because the commissioners Abasically mandated
it,@ and she could not
say that it was the Board of Managers= decision. 








f.        The
Hospital District=s Supplemental Motion for Summary Judgment
Evidence Showing that the Hospital District Acted Within its Legislative
Mandate.








In its supplemental motion for partial summary judgment,
the Hospital District argued that Health and Safety Code sections 281.049 and
281.050 contemplate considerable oversight by the Commissioners Court, and that
when the Commissioners Court ordered that the Hospital District stay within the
County=s guidelines when
purchasing property and use the Right of Way Division, it was acting within
this legislative scheme.  The Hospital District emphasized that section 281.050
requires the approval of the Commissioners Court before the Hospital District
is authorized to condemn property.[13] 
The Hospital District also addressed the evidence that former Hospital District
CEO John Guest concealed relevant information from the Board of Managers
concerning Allison=s proposals for the joint development of
Textac=s property before
the Board first voted to acquire the property in January 2004.  It presented
evidence that it claims showed that this problem was more than adequately
remedied.  The Hospital District=s evidence,
consisting primarily of documents and deposition testimony from Allison, two
Hospital District Board of Managers members, and others, demonstrated that
Allison informed the Board members of his proposal in February 2004, and it was
considered by the Board during meetings on March 8 and March 12, 2004.  After
considering Allison=s proposal, the Board voted at the March
12 meeting to reject it and to proceed with the purchase of Textac=s property, by
condemnation if necessary.  This decision was reaffirmed by the resolution
adopted by the Board of Managers on April 29, 2004, in which it decreed that a
public necessity and convenience existed for the LBJ Hospital Expansion
Project, and authorized the purchase or condemnation of tracts within the
project area, including Textac=s property. 

g.       The
Hospital District=s Evidence Showing Valid Motives for
Condemning the Property and Textac=s Alleged True
Motive for Suing.

In addition to all of the other evidence it presented, the
Hospital District presented evidence that its expansion plan called for the
acquisition of about twenty-six acres of land to the west of LBJ Hospital, and
only about nine acres of this land was owned by Textac until December, 2003. 
In a July 31, 2003 meeting of the Board of Managers, the Board authorized the
Hospital District to enter into negotiations for the purchase of Textac=s property.  In
deposition testimony, Allison conceded that, after being informed that the
Hospital District wanted to negotiate the purchase of his land, he actively
sought to acquire all of the twenty-six acres for Textac.  In his affidavit,
Allison stated that he had begun purchasing property in the area more than
fifteen years earlier, and had been in discussions with the Hospital District
and the University of Texas over the course of this time period Arelating to the
development potential for the benefit of all stakeholders.@  

The Hospital District claims its evidence showed that
Allison was more interested in a joint development of the property rather than
an outright sale.  It claims this raises a fact issue concerning his motivation
for refusing to agree to sell to the Hospital District, which ultimately led to
the condemnation action and the basis for this lawsuit.  

3.       The
Evidence Created a Fact Issue on All of the Issues Presented to the Trial Judge








The foregoing evidence raises fact issues precluding
judgment as a matter of law in Textac=s favor.  Further,
the issues were hotly contested and much of the evidence was in the form of
conflicting affidavits and deposition testimony.  For example, as discussed
above, the evidence concerning whether a bribe was sought on behalf of
Commissioner Lee, and whether Allison=s refusal to pay
the alleged bribe resulted in a retaliatory condemnation action, was the
subject of contradictory evidence primarily in the form of affidavits and
deposition testimony.  Similarly, what actions the county commissioners, the
Hospital District, and others took in advance of the board=s resolution to
approve the acquisition of Textac=s property on
April 29, 2004, and whether these actions led to arbitrary and capricious
conduct on the part of the Hospital District, was accompanied by voluminous and
often contradictory evidence in the form of documents, affidavits, and
deposition testimony.  

Reviewing the evidence in the light most favorable to the
Hospital District, we hold that Textac has failed to demonstrate as a matter of
law that the Hospital District=s condemnation action was founded in fraud
or was arbitrary and capricious.  Therefore, the trial court erred in granting
Textac=s motion to
dismiss and in awarding attorney=s fees to Textac. 
We sustain the Hospital District=s first three
issues.

Conclusion

Textac has failed to prove as a matter of law that the
Hospital District=s condemnation action was founded in fraud
or was arbitrary and capricious.  For this reason, we reverse the trial court=s order of
dismissal and subsequent judgment, and remand the case for trial in accordance
with this opinion.

 

 

/s/      Wanda McKee Fowler

Justice

 

 

Judgment rendered
and Opinion filed May 1, 2008.

Panel consists of
Justices Fowler, Guzman and Senior Justice Hudson.*

 









[1]  The Hospital District originally filed separate
petitions for each tract of land, and the separate cases were later
consolidated.  The Hospital District also sought to acquire other tracts of
land for the LBJ Hospital Expansion Project, but they are not relevant to this
appeal.





[2]  The taxing authorities included the Houston
Independent School District, the City of Houston, the Houston Community College
System, and Harris County.





[3]  The property is located in Commissioner Lee=s district.





[4]  The Hospital District filed objections and moved to
strike evidence contained in Textac=s
response to its motion for partial summary judgment, but the record does not
show that the trial court ruled on the objections.





[5]  Although the reporter=s record of the hearing titles it a hearing on ADefendant=s
Motion to Dismiss,@ the trial court=s
order of dismissal reflects that Aplaintiff=s motion for partial summary judgment and defendant=s motion to dismiss this condemnation proceeding@ were the matters heard.  





[6]  After the order of dismissal was signed, the Hospital
District moved to recuse the trial judge, Judge Gary Michael Block.  The record
reflects only that, upon referral, this motion was denied.  However, Judge
James Blackstock presided over the trial on Textac=s damages.





[7]  We express no opinion concerning whether a motion to
dismiss is an appropriate procedural vehicle in which to raise claims such as
those Textac presented below.  The parties have not raised this argument on
appeal and we do not consider it.  The issue before us is solely the
appropriate standard of review to apply on appeal.





[8]  Textac conceded below and on appeal that it was not asserting that the
Hospital District failed to comply with the statutory requirements of Texas
Property Code section 21.012.  Therefore,
the proceeding was not subject to abatement to allow the Hospital District to
satisfy the requirements.  See Hubenak v. San Jacinto Gas Transmission Co.,
141 S.W.3d 172, 184 (Tex. 2004).





[9]  Textac filed its motion to dismiss pursuant to Texas Property Code
section 21.019(c), which enables the trial court to make the landowner whole if
he prevails and to discourage the condemnor from seeking condemnation unfairly
or irresponsibly.  See Malcomson Road Util. Dist. v. Newsom, 171 S.W.3d
274, 275 (Tex. App.CHouston [1st Dist.] 2005, pet.
denied).  This section does not indicate any particular grounds for a motion to
dismiss, and it is not limited to motions to dismiss as the only vehicle by
which a landowner may obtain relief:

 

A court that hears and grants a motion
to dismiss a condemnation proceeding made by a property owner seeking a
judicial denial of the right to condemn or that otherwise renders a judgment
denying the right to condemn may make an allowance to the property owner
for reasonable and necessary fees for attorneys, appraisers, and photographers
and for the other expenses incurred by the property owner to the date of the
hearing or judgment. 

 

Tex. Prop.
Code ' 21.019(c) (emphasis added).





[10]  This Court has located one case, Valero Eastex Pipeline Co. v.
Jarvis, in which the appellate court considered the standard of review to
apply to a trial court=s grant of the landowners= motion to dismiss a pipeline
company=s condemnation action.  See
990 S.W.2d 852 (Tex. App.CTyler 1999, pet. denied).  In that
case, the pipeline company argued that the trial court erred because it had
found that it was not necessary for the company=s pipeline to be located on the landowners= property.  Id. at 856.  The
appellate court stated that it would review the issue de novo because the trial
court dismissed the case on a question of law.  Id.  The court stated
that, because the statute authorizing the company to condemn property did not
require it to show that the property was necessary for public use, its
determination of the necessity for acquiring the property was conclusive unless
the landowners could prove fraud, bad faith, abuse of discretion or arbitrary
and capricious action.  Id.  The landowners did not plead any of these
defenses and attached no evidence to their motion to dismiss.  Consequently,
the court sustained the pipeline company=s issue and held that Athe trial court was without authority to grant the motion
to dismiss.@  Id.  Similarly, and
consistent with summary judgment review, we apply the de novo standard, but
unlike the Valero case, we must determine whether the Hospital District=s arguments and evidence in
response to Textac=s motion raised genuine issues of
material fact that preclude a finding that Textac is entitled to the relief it
seeks as a matter of law.





[11]  Even if we were to agree with the Hospital District
that we should view the motion to dismiss as a plea to the jurisdiction, the
outcome would be the same.  When a plea to the jurisdiction challenges the pleadings, the trial
court must determine if the pleader has alleged facts that affirmatively
demonstrate the court=s jurisdiction to hear the cause.  See
State v. Holland, 221 S.W.3d at 642; Tex. Dep=t of Parks & Wildlife v.
Miranda, 133
S.W.3d 217, 226 (Tex. 2004).  A plea to the jurisdiction is a dilatory plea,
the purpose of which is to defeat a cause of action without regard to whether
the claims asserted have merit.  Bland Indep. Sch. Dist. v. Blue, 34
S.W.3d 547, 554 (Tex. 2000).  Thus, when deciding a plea to the jurisdiction,
the trial court should not reach the merits of the case.  Id.  In some
instances, however, a plea to the jurisdiction may require the court to
consider evidence pertaining to jurisdictional facts.  Holland, 221
S.W.3d at 642; Miranda, 133 S.W.3d at 227B28.  When the jurisdictional challenge implicates
the merits of the plaintiffs= cause of action and the plea to the jurisdiction includes evidence,
the trial court reviews the relevant evidence to determine if a fact issue
exists.  Miranda, 133 S.W.3d at 227.  The Miranda Court
acknowledged that this standard Agenerally mirrors that of a summary judgment@ and so Apreserve[s] the parties= right to present the merits of
their case at trial.@  Id. at 228.  Thus, a plea
should not be granted if a fact issue is presented as to the court=s jurisdiction.  Holland,
221 S.W.3d at 643.





[12]  To support its contention that the Commissioners
Court was willfully indifferent to the Hospital District=s independence, Textac included an excerpt from an
unofficial transcript of a meeting of the Commissioners Court on December 2,
2003, in which the following exchange took place concerning the Hospital
District=s acquisition of real estate:

 

MR. RADACK:  Yes, sir, item A7@ in reference
to the Hospital District acquiring real estate whether through leases or
purchase and I received some information that the district has basically felt
free to pick up the telephone and call real estate agents when they want to
acquire property and Mr. Barnhill [of the County Attorney=s Office], I think, is very clear that they should be
going through our Right of Way section.  Do you agree with that?

 

MR. BARNHILL:  That was our recommendation.

 

MR. LEE:  Well there=s a pretty clear practice and a set of standards and procedures that we
need to be following.  If this new administration doesn=t know that, you may need to explain it to them and
that=s to everybody who is acquiring property not just the
Hospital District, but any entity that is drifting off into shopping on the
phone.  

 

MR. BARNHILL:  Certainly, we=ll be happy to convey the court=s desire to the Hospital District.

 

MR. LEE:  Yes, well state law requirements say if it=s over a $1 million you have some steps that are in
your local government code.  I surely don=t
want to encroach on your business.

 

MR. BARNHILL:  We=ll
be happy to work with the district to make sure that they follow the law.  I
don=t know that there=s a
law that requires them to use the Right of Way department.  If that=s the desire of the court you may want to express that
clearly to them.

MR. LEE:  Well, the procedure is more important than
what department it falls in.  It gets to Right of Way because logical land
handling and usage that=s kind of what we=ve
been taught, but they need to be in sync with what we do with Flood Control and
other departments of acquiring properties.

 

MR. BARNHILL;  And we agree with that 100%.  Our
recommendation was that they use the county Right of Way Department for
acquisitions even if they=re going to...

 

MR. RADACK:  I would like to move that the County
Attorney=s Office inform the District to follow our purchasing
policies of real estate and lease of real estate.  I make a motion that you
inform them that the Commissioners Court is making clear to them to follow the
guidelines.

 

MR. ECKELS:  We=re
requesting that they follow those, I understand that they are a separate
entity.

 

MR. RADACK:  I=m
not just requesting, they will follow the guideline.

 

MR. BARNHILL:  We=ll
be happy to do so.

 

MR. RADACK:  I move.

 

MR. EVERSOLE:  Second

 

MR. ECKELS:  Motion made and seconded.  All in favor? 
(Unanimous Response)  All opposed?  (None) Motion carries.

 





[13]  In this regard, the Hospital District pointed to
other functions it either cannot perform itself or which it can perform only
with the approval of Commissioners Court.  For example, the Hospital District=s budget must be submitted to the Commissioners Court
for final approval.  Tex. Health &
Safety Code ' 281.091.  At the end of every fiscal year, the
Hospital District=s administrator must submit a sworn report to the
Commissioners Court accounting for all expenditures.  Id. ' 281.092.  Commissioners Court has the sole authority
to levy and collect taxes to support the Hospital District.  Id. ' 281.096.  Only the Commissioners Court has the
authority to issue and sell general obligation bonds to fund the Hospital
District or to hold a bond election.  Id. '' 281.101B.102.  The county judge is required to execute all
such bonds and Commissioners Court approval is required before the Hospital
District may issue certificates of obligation. Id '' 281.104, 281.106.  Finally, the members of the Harris
County Hospital District Board of Managers are appointed by the Harris County
Commissioners Court.  Id. '
281.021(c). 





*  Senior Justice Harvey Hudson sitting by assignment.