Reversed and Rendered and Memorandum Opinion filed July 29, 2010

 

In
The

Fourteenth
Court of Appeals



NO. 14-09-00878-CV



The University
of Texas Medical Branch at Galveston,
Appellant 

v.

Cynthia
Malveaux and Louis Malveaux, Appellee 



On Appeal from
the 56th District Court

Galveston County, Texas

Trial Court
Cause No. 08CV0755



 

MEMORANDUM OPINION 

            This is an
accelerated appeal from the trial court’s denial of appellant The University of
Texas Medical Branch at Galveston’s (“UTMB”) plea to the jurisdiction, motion
to dismiss appellees Cynthia Malveaux and Louis Malveaux’s claims, and no-evidence
motion for summary judgment.  On appeal, UTMB contends the Malveauxes’ claims
of lack of informed consent and alleged negligent medical judgment do not fall
under the Texas Tort Claims Act; hence, the trial court erred in denying its
plea to the jurisdiction.  Additionally, UTMB argues the Malveauxes have not
established that a condition or use of tangible personal property caused the
injuries; therefore, the Malveauxes failed to prove UTMB waived its sovereign
immunity.  UTMB also complains the trial court erred in overruling its
objections to two exhibits attached to the Malveauxes’ response to UTMB’s plea
to the jurisdiction.  Finally, UTMB contends the trial court improperly denied
its no-evidence motion for summary judgment.  We reverse and render judgment
dismissing the Malveauxes’ claims for want of subject-matter jurisdiction.   

I

            In 2003, as
treatment for breast cancer, Cynthia Malveaux underwent a lumpectomy,
chemotherapy, and radiation therapy.  When she sought breast-reduction surgery
in 2006, physicians told Mrs. Malveaux that the radiation rendered the tissue
in her right breast inoperable.  But Dr. Lisa Gould, a surgeon at UTMB, disagreed
and maintained that she could operate on the irradiated tissue.  On July 19,
2006, Dr. Gould performed a bilateral reduction mammoplasty on Mrs. Malveaux at
UTMB.  After the surgery, Mrs. Malveaux’s right breast failed to heal, and she suffered
extensive ulceration and fat necrosis.  As a result, Mrs. Malveaux has
undergone numerous procedures, including an unsuccessful skin graft and a total
mastectomy of her right breast.

            The Malveauxes sued
UTMB and the doctors at UTMB alleging professional negligence.  On May 29,
2009, following a hearing on the Malveauxes’ expert report, the trial court
dismissed all of their claims, except their “claims of negligence concerning
informed consent, the advice to proceed with surgery which shall include the
advice to operate on previously radiated breast tissue, and the failure to
perform the surgery in a pattern that excludes the radiated tissue.”  

            UTMB then filed a
plea to the jurisdiction, motion to dismiss, and a no-evidence motion for summary
judgment.  Before the trial court ruled on UTMB’s motions, the Malveauxes filed
their first-amended petition, which removed the doctors as defendants.  The
trial court heard the plea, motions, and objections on September 15, 2009. 
After the hearing, the trial court denied UTMB’s plea and both motions.  The
court also overruled UTMB’s objections to the exhibits the Malveauxes had
attached to their response to the plea.  This appeal followed.        

II 

Plea to the Jurisdiction

In Texas, sovereign immunity defeats a trial court’s subject-matter
jurisdiction.  Tex. Dep’t. of Parks & Wildlife v. Miranda, 133
S.W.3d 217, 225 (Tex. 2004); Dallas Area Rapid Transit v. Whitley, 104
S.W.3d 540, 542 (Tex. 2003).  The trial court must decide at the earliest
opportunity whether it has statutory or constitutional authority to hear the
case before allowing the litigation to proceed.  Miranda, 133 S.W.3d at
226.  The plaintiff bears the burden of affirmatively proving the trial court
has subject-matter jurisdiction over a case.  Brazoria County v. Van Gelder,
304 S.W.3d 447, 451 (Tex. App.—Houston [14th Dist.] 2009, pet. filed).  A
defendant may then file a plea to the jurisdiction, which is a dilatory plea
that challenges the court’s authority to determine the subject matter of the
action.  Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 554 (Tex.
2000).  The existence of subject-matter jurisdiction is a question of law we
review de novo.  State v. Holland, 221 S.W.3d 639, 642 (Tex. 2007); Miranda,
133 S.W.3d at 226.  

            A court reviewing
a plea to the jurisdiction is not limited to reviewing just the pleadings, but
it may also consider evidence when necessary to resolve the jurisdictional
issues.  Bland Indep. Sch. Dist., 34 S.W.3d at 555.  “When a plea to the
jurisdiction challenges the existence of facts alleged to establish the trial
court’s subject[-]matter jurisdiction, the trial court must consider relevant
evidence offered by the parties to determine if a fact issue exists.”  Arnold
v. Univ. of Tex. Sw. Med. Ctr. at Dallas, 279 S.W.3d 464, 467 (Tex.
App.—Dallas 2009, no pet.) (citing Bland Indep. Sch. Dist., 34 S.W.3d at
554).  When reviewing a plea to the jurisdiction in which the pleading
requirement has been met and evidence has been submitted to support the plea that
implicates the merits of the case, we take as true all evidence favorable to
the non-movant.  Univ. of Tex. Med. Branch v. Thompson, No.
14-06-00014-CV, 2006 WL 1675401, at *3 (Tex. App.—Houston [14th Dist.] June 20,
2006, no pet.) (mem. op.) (citing Miranda, 133 S.W.3d at 226).  Much
like the summary-judgment standard, we indulge every reasonable inference and
resolve all doubts in favor of the non-movant.  See Bland Indep. Sch.
Dist., 34 S.W.3d at 554.  If the evidence is undisputed or fails to raise a
fact issue on the jurisdictional issue, then the trial court rules on the plea
to the jurisdiction as a matter of law.  Miranda, 133 S.W.3d at 228.   

The Tort Claims Act

            In Texas, a
governmental unit is immune from tort liability unless the legislature has
waived immunity or the governmental unit consents to the suit.  Miranda,
133 S.W.3d at 224 (discussing consent to suit); Dallas County Mental Health
& Mental Retardation v. Bossley, 968 S.W.2d 339, 341 (Tex. 1998)
(discussing the legislature waiving immunity).  We review the applicable
statute to see if the legislature has provided the governmental unit with
immunity from suit.  Bossley, 968 S.W.2d at 341; Dimas v. Tex. State
Univ. Sys., 201 S.W.3d 260, 265 (Tex. App.—Houston [14th Dist.] 2006, no
pet.).  The Tort Claims Act provides a limited waiver of sovereign immunity,
which allows suits to be brought against governmental units only in
narrowly-defined circumstances.  See Tex. Civ. Prac. & Rem. Code Ann
§§ 101.001–.009 (Vernon 2005); Tex. Dep’t. of Criminal Justice v. Miller,
51 S.W.3d 583, 587 (Tex. 2001).  Thus, UTMB—which no one disputes is a
governmental entity—is immune from suit unless the Tort Claims Act expressly
waives immunity.  Miranda, 133 S.W.3d at 224–25.

            The specific Tort
Claims Act provision under which the Malveauxes allege waiver provides that a
“governmental unit in the state is liable for . . . personal injury and death
so caused by a condition or use of tangible personal or real property if the
governmental unit would, were it a private person, be liable to the claimant
according to Texas law.”  Tex. Civ. Prac. & Rem. Code Ann. § 101.021(2)
(Vernon 2005).  Texas courts have consistently required a nexus between the
condition or use of the property and the injury.  Whitley, 104 S.W.3d at
543; Miller, 51 S.W.3d at 588; see Bossley, 968 S.W.2d at
342–43.  

The Texas Supreme Court has defined the word “use” as
“to put or bring into action or service; to employ for or apply to a given purpose.” 
Miller, 51 S.W.3d at 588.  Claims that involve failure to use or the
non-use of property are not within the waiver of sovereign immunity.  Id.
at 587–88.  Claims, however, that involve use or misuse of property do affect
waiver.  Id. at 588; Sheth v. Dearen, 225 S.W.3d 828, 832 (Tex.
App.—Houston [14th Dist.] 2007, no pet.).  But the nexus between the use of the
property and the injury requires more than mere involvement of property; the
use must actually proximately cause the injury.   Bossley, 968 S.W.2d at
343.  Additionally, property does not cause an injury if it does nothing more
than furnish the condition that makes the injury possible.   Miller, 51
S.W.3d at 588; Bossley, 968 S.W.2d at 343.  

UTMB
argues the trial court improperly denied its plea to the jurisdiction because
the Malveauxes’ claims of lack of informed consent and error in medical
judgment do not invoke waiver of the Tort Claims Act.  Furthermore, UTMB
asserts the Malveauxes did not establish their injuries were caused by a
condition or use of tangible property; hence, the trial court should have
granted UTMB’s plea to the jurisdiction because it did not waive its immunity
under the Tort Claims Act.  The Malveauxes argue their injuries were not solely
caused by lack of informed consent or an error in medical judgment, but by “the
misuse of equipment in excising the tissues, using an improper pattern to
excise the tissue and failure to properly use the supplies.”  To support this
contention, the Malveauxes point to both Mrs. Malveaux’s medical records and the
affidavit of Eugenio Aguilar, M.D., a licensed and board-certified plastic
surgeon.   

In
the Malveauxes’ first-amended petition, which was filed after the trial court
ruled on the expert report and after UTMB filed its plea to the jurisdiction,
the Malveauxes claimed UTMB was negligent in: 

[f]ailing to perform the breast reduction surgery in a
pattern that excluded the previously irradiated breast tissue; [f]ailing to
inform Mrs. Malveaux that a risk or hazard of surgery was an inability of the
irradiated breast tissue to heal; and [p]erforming breast reduction surgery on
the irradiated tissue of Mrs. Malveaux’s right breast.

 Construing
the pleadings in favor of the Malveauxes and looking at their intent, we now
determine whether the Malveauxes have pleaded sufficient facts to bring their
claim under the waiver of immunity under the Torts Claims Act.   See Arnold,
279 S.W.3d at 468.   

Lack
of Informed Consent

In
its first issue, UTMB contends the Malveauxes’ claim for lack of informed
consent does not invoke a waiver of its sovereign immunity.  To their response
to UTMB’s plea to the jurisdiction, the Malveauxes attached Dr. Aguilar’s
affidavit, in which he states “[f]ailing to inform Mrs. Malveaux that she was
not appropriate for surgery was a breach of the standard of care, which caused
Mrs. Malveaux damages.”  UTMB contends this allegation fails to raise the
notion of tangible-personal-property condition or use.  UTMB also cites this
court’s decision in Mitcham v. University of Texas Medical Branch at
Galveston for the proposition that a claim of lack of informed consent does
not invoke waiver of its sovereign immunity under the Tort Claims Act.  

In
Mitcham, the appellant claimed that when she was admitted to the
hospital for an arteriogram, her doctor failed to inform her the procedure
could cause severe complications.  818 S.W.2d 523, 524 (Tex. App.—Houston [14th
Dist.] 1991, writ denied).  After the doctor performed the procedure, the appellant
developed blood clots which led to the amputation of her right foot.  Id. 
The appellant sued the doctor and UTMB (the hospital where the procedure was
performed) alleging that inserting a needle into her artery without informing
her the procedure could lead to blood clots was a misuse of tangible personal
property.  Id.  This court concluded the appellant’s argument focused on
her discussion with her doctor and not the use or misuse of the needle.  Id.
at 525.  We held “that the alleged failure to provide the appellant with
information does not involve tangible property in the sense contemplated by the
[Tort Claims Act].”  Id.

In the Malveauxes’ pleadings, they claim the doctors
at UTMB failed to inform Mrs. Malveaux of the risks involved in operating on
the irradiated breast tissue in her right breast.  Like the appellant in Mitcham,
the Malveauxes appear to argue this lack of informed consent constitutes a
waiver of the Tort Claims Act.  But the alleged failure to provide Mrs.
Malveaux with information about the hazards or risks of her surgery “does not
involve tangible personal property in the sense contemplated by the [Tort
Claims Act].”  Id.  As the real substance of this claim is lack of
informed consent, the Malveauxes’ cause of action does not invoke the Tort
Claims Act’s waiver of sovereign immunity.  Accordingly, we sustain UTMB’s
first issue.  

Error
in Medical Judgment

            In
its second issue, UTMB argues the Malveauxes’ complaints that breast-reduction
surgery should not have been performed on the irradiated tissue of Mrs.
Malveaux’s right breast are claims concerning an alleged error in medical
judgment.  UTMB contends there is no sovereign-immunity waiver because the
complaints do not involve tangible property.  In response, the Malveauxes
emphasize their claim does not solely involve “medical judgment, because the
claim, in part, is based upon the misuse of the equipment in excising the
tissues, using an improper pattern to excise the tissue and failure to properly
use the supplies including sutures, Blake Drain, and all other items used to
improperly perform the surgery and close the wounds, which caused the delayed
healing, ulceration, and necrosis.”  

            In
Texas Department of Criminal Justice v. Miller, the Texas Supreme Court
reviewed a suit for negligence filed against the staff members at the Texas
Department of Criminal Justice (“TDCJ”).  51 S.W.3d at 585.  An inmate at the
TDCJ facility began suffering from multiple symptoms including nausea and
severe headaches.  Id.  TDCJ’s staff members treated the inmate, but his
symptoms persisted.  Id.  The inmate died one month later from
cryptococcal meningitis, which was diagnosed after the inmate was transferred
to an off-site hospital.  Id.  The inmate’s surviving spouse sued TDCJ
alleging that its staff members “improperly administer[ed] pain medication and
intravenous fluids which masked the symptoms of meningitis.”  Id.  But
the court concluded that while the staff members’ treatment of the inmate may
have suppressed the symptoms of meningitis, the treatment did not actually
cause his death.  Id. at 588.  The court held the inmate’s “meningitis
became progressively worse due to the passage of time and an alleged error in
medical judgment; there [was] no evidence that any defendant’s acts hastened or
exacerbated his decline.”  Id.  

            Arnold
v. University of Texas Southwestern Medical Center at Dallas is also
instructive.  279 S.W.3d at 469–70.  The appellant had received breast-augmentation
surgery.  Id. at 466.  After discovering that the implants had ruptured,
the appellant consulted with a doctor at the University of Texas Southwestern
Medical Center, who performed a surgery to replace the implants.  Id.  Although
no complications occurred during the surgery, the appellant complained to the
doctor about the large size of the new implants.  Id.  She sued the
doctor, claiming the large implants amounted to a deformity and that he had
failed to comply with her desire for smaller implants.  Id. at 467.  The
court noted that she did not complain that the implants themselves were
defective, but focused instead on the doctor’s medical decisions.  Id.
at 469–70.  The court held “any damages from the larger implants were caused by
the alleged negligence of [the doctor] in using his medical judgment . . .
[and] errors in medical judgment do not provide waiver of immunity under the
[Tort Claims Act].”  Id. at 470.

            Likewise,
the decision to perform breast-reduction surgery on the irradiated tissue of
Mrs. Malveaux’s right breast did not involve the use of tangible property.  The
decision to operate, if anything, is an alleged error in medical judgment by the
doctors at UTMB.  As discussed in Miller and Arnold, an error in
medical judgment is not within the Tort Claims Act’s waiver of immunity.  See
Miller,  51 S.W.3d at 588; Arnold, 279 S.W.3d at 470.  Accordingly,
we sustain UTMB’s second issue on appeal.

Condition
or Use of Tangible Personal Property

            In
its third issue, UTMB attacks all of the Malveauxes’ claims on the ground that
they have not established that Mrs. Malveaux’s injuries were caused by a
condition or use of tangible personal property.  The Malveauxes respond that
their claims are overrun with allegations concerning the tangible use of
personal property.    Both in their briefs and in their response to UTMB’s plea
to the jurisdiction, the Malveauxes maintain that the “gravamen of [their]
complaints concern[s] failure in performance of the surgery and the use of
medical equipment, to include surgical equipment, scalpels, sutures and any
other surgical equipment used to excise the radiated tissue.”  The Malveauxes
point especially to their claim that “the failure to perform the surgery in a
pattern that excludes the radiated tissue” as an allegation that the misuse of
surgical equipment proximately caused Mrs. Malveaux’s injuries.  

            In
their first-amended petition, the Malveauxes allege the doctors at UTMB used or
misused “medical supplies and dressings, by failing to use dressings and
medical equipment to promote full healing of Mrs. Malveaux’s irradiated right
breast . . . [and the doctors at UTMB] misused medical equipment, including but
not limited to scalpels and surgical equipment to operate on Mrs. Malveaux’s
irradiated right breast.”  Dr. Aguilar’s affidavit, which was attached to the Malveauxes’
response to the plea to the jurisdiction, comprises the thrust of their
allegations against UTMB.  In his affidavit, Dr. Aguilar states:

[The doctors at UTMB] performed surgery on Mrs. Malveaux’s
previously radiated right breast and failed to perform the surgery in a pattern
that excludes the radiated tissue.  This is necessary because radiated tissue
does not contain the blood flow that is necessary to ensure proper healing.  It
is the standard of care for a surgeon not to operate on tissue that has been previously
subject to radiation, or to otherwise perform the surgery in a manner to
exclude the tissue that has been damaged from radiation.  It was a breach of
the standard of care for [the doctors at UTMB] to perform a reduction surgery
on Mrs. Malveaux’s right breast, and to perform the surgery in a manner that
included the radiated tissue on her right breast.  This breach caused the loss
of the right breast tissue, skin and glandular tissue, delayed healing, loss of
breast volume due to necrosis, and the necessity of  a TRAM flap
reconstruction.  From an operative perspective, the care provided by UTMB . . .
fell below the standard of care because the providers: Failed to properly use
scalpels and surgical equipment to operate on Mrs. Malveaux’s irradiated right
breast; [and] [f]ailed to perform the breast reduction surgery in a pattern
that excluded the previously irradiated breast tissue.     

The Malveauxes also attached the
operative report from Mrs. Malveaux’s medical records to their response, which
discusses her entire procedure from start to finish.  The Malveauxes contend
the affidavit coupled with the operative report demonstrate the doctors at UTMB
misused equipment while excising the radiated tissue in Mrs. Malveaux’s right
breast.  

Although the Malveauxes allege in their first-amended
petition that scalpels and surgical equipment were misused during Mrs.
Malveaux’s operation, there is no evidence their use or misuse caused her
injuries.  The Malveauxes emphasize that a 19 French Blake drain caused Mrs.
Malveaux’s injuries, but the evidence in the record reflects only that the
drain was used in the surgery; nothing indicates that the drain was misused or
that anything about it contributed to Mrs. Malveaux’s injuries.  In fact, according
to the operative report, there were no complications during the procedure.  And
nowhere in his affidavit does Dr. Aguilar mention or even hint that the drain
or any other piece of tangible property actually caused the injuries.  Compare
Tejada v. Rowe, 207 S.W.3d 920, 922–23, 925 (Tex. App.—Beaumont 2006, pet.
filed) (plaintiff’s expert report includes averments that during the birth of
the plaintiff’s twins, the doctors negligently administered the drug Pitocin,
which increased the force of uterine contractions, and delivered the twins
using forceps, which were improperly employed and injured the babies; thus, the
twins’ cerebral palsy was the direct result of the misuse of tangible
property—Pitocin and forceps), with Miers v. Tex. A&M Univ. Sys.
Health Sci. Ctr., 311 S.W.3d 577, 579–80 (Tex. App.—Waco 2009, no pet.) (concluding
although the plaintiff listed several pieces of equipment that were misused
during the procedure, there was no evidence the use or misuse of the equipment
caused the plaintiff’s injuries; therefore, there was no waiver of sovereign
immunity); Ager v. Wichita Gen. Hosp., 977 S.W.2d 658, 661–62 (Tex.
App.—Fort Worth 1998, no pet.) (conclusory allegations that failure to
recognize symptoms (1) resulted from misuse or condition of medical devices
including stethoscopes and thermometers, and (2) proximately caused plaintiff’s
injuries, failed to sufficiently allege that any tangible item of property or
its use was a contributing factor of plaintiff’s injuries); Taylor v. Univ.
of Tex. Health Ctr. at Tyler, No. 12-01-00381-CV, 2002 WL 31323413, at *5–6
(Tex. App.—Tyler Oct. 9, 2002, pet. denied) (not designated for publication) (alleging
the injuries were caused by the operating room, surgical area, and forty-eight individual
items is insufficient if unaccompanied by description of some defective
condition or an explanation of how the items were negligently used or misused).
 

As this court has held previously, not every case
involving a procedure at a public facility can invoke the Tort Claims Act’s
waiver of immunity.  See Sheth, 225 S.W.3d at 833.  If it did, a patient’s
complaint that “a different form of treatment than the one employed would have
been more effective” would always succeed so long as the offending doctor uses
some form of tangible property.  See id.  That is why the nexus between
the use of the property and the injury requires more than mere involvement of
property; the use must actually cause the injury.  See Bossley,
968 S.W.2d at 343.  Because the Malveauxes did not plead sufficient factual
allegations that the use or misuse of tangible property caused Mrs. Malveaux’s
injuries, and no evidence established a causal connection between the use or
misuse of the tangible property and the harm, the Malveauxes’ claims do not
invoke the Tort Claims Act’s waiver of sovereign immunity.  See Wise
Reg’l Health Sys. v. Brittain, 268 S.W.3d 799, 811 (Tex. App.—Fort Worth
2008, no pet.) (citing Ager, 977 S.W.2d at 662 (“Without proof that a
specific act or item of property contributed to injury, there can be no
proximate cause.”)).  Accordingly, we sustain UTMB’s third issue.  

*
* *

Through
our disposition of UTMB’s first three issues, we have determined that the trial
court had no subject-matter jurisdiction over the claims in this case.  Thus it
is unnecessary to address UTMB’s remaining issues.  For the forgoing reasons,
we reverse the trial court and render judgment dismissing the Malveauxes’
claims for want of subject-matter jurisdiction.  

 








                                                                                    

                                                                        /s/        Jeffrey
V. Brown

                                                                                    Justice

 

 

 

Panel consists of Justices Yates,
Seymore, and Brown.